2009 Ark. App. 666

**Janis A. COSSEY, Appellant,**

v.

**GARY A. THOMAS RACING STABLE and Union Insurance Company, Appellees.**

**No. CA 08–1480.**

Court of Appeals of Arkansas.

Oct. 7, 2009.

The Law Firm of White & White, PLC, by J. Mark White, Bryant, for appellant.

Frye Law Firm, P.A., by Cynthia E. Rogers, North Little Rock, for appellee.

KAREN R. BAKER, Judge.

Appellant, Janis Cossey, appeals from a decision by the Workers' Compensation Commission, reversing the opinion of the ALJ and denying appellant benefits. On appeal, Cossey argues that substantial evidence does not support the Commission's decision. We affirm.

In February 2005, Janis Cossey was employed by Gary Thomas Racing Stables at Oaklawn Park. Her job duties included walking and grooming racehorses. She testified that on February 2, 2005, at approximately 10 a.m. she was walking a horse down a narrow hallway when another horse leaned out of its stall and bit her on her arm. She testified specifically that the horse "bit [her] and pulled [her] toward him, crushing [her] arm and pulling up the meat of [her] left upper arm, in between the elbow and the shoulder." She described the bite as "open and gaping." She testified that she sought treatment from Dr. Roper at 11 a.m. on February 2, 2005. The record shows, however, that Dr. Roper's report is dated February 15, 2005. Cossey testified that Dr. Roper was "concerned about infection," so he "treated" the bite on her arm and "cleaned it." Dr. Roper's report indicated that he sent

claimant for a tetanus shot, prescribed antibiotics, and assessed her condition as a "Horse Bite this AM." Cossey testified that two days later, a second horse bit her on the same area of her arm. She stated, however, that the second bite did not break the skin and that she did not return to the doctor.

Approximately one month later, Cossey was terminated; Cossey testified that the reason she was terminated was "because [she] couldn't do [her] work right," and because she "was complaining." Cossey then began working for a restaurant near Oaklawn Park. She stated that she worked at the restaurant through the summer and while working there, she "had problems with burning the whole time [she] worked at the restaurant." She explained that she "began dropping things" and testified that her horse bite had not healed. Cossey testified, however, that when racing season returned eight months later, she began working for Beverly Fowler, another horse trainer at Oaklawn Park.

One year after the first horse bite, on February 16, 2006, claimant again sought medical treatment. Initially, she sought treatment from the emergency room, where she was diagnosed with "radial palsy." She testified that she was unable to return to work. She was also treated by the Charitable Christian Clinic, which offered her free services. There, she saw Dr. Tucker, whose report noted a "scar" and a "clear indentation" on Cossey's upper ⌊₃arm. Dr. Tucker described her arm as having "clear skin lesions where the horse bite left areas of the skin that did not heal properly." Dr. Tucker prescribed her pain medication and ordered a nerve conduction study and an MRI. The record shows that an MRI of Cossey's shoulder was performed, however, an MRI of Cossey's arm was not. Dr. Tucker's notes indicated that "[t]he patient has suffered a severe injury, with some neurological problems such [as] the atrophy of the muscle related to the horse bite. It is difficult to relate this to anything else." In a post-treatment letter, Dr. Tucker stated "[t]here is no doubt the two horse bites produced some damage to the arm, and one can see the skin lesion still remaining. . . . There is very localized atrophy, possibly related to damage to the circumflex branch of the radial nerve. The horse bite could have produced an injury to the radial nerve, although it would be surprising that the radial nerve palsy did not occur until a year later." Cossey admitted in her testimony that Dr. Tucker's report "does do a lot of speculation"; however, she blamed the speculation on the fact that she did not have the money to have the proper medical tests performed. When asked why Dr. Tucker's report noted the problems with her right hand, she stated that she did not know why the report did not correctly state that she was having problems with her left hand and not her right hand.

Cossey testified that her symptoms began with the first horse bite and have continued since that time. She stated that "her wrist dropped," that her pain had spread to her back and joints, and that her muscles were deteriorating. She also described spasms in her left shoulder and "clear indentations from all the bites." She also testified that she was on medication for depression.

⌊₄A hearing was held before the Administrative Law Judge (ALJ) on August 8, 2007. Following the hearing, the ALJ awarded the claimant benefits finding that she had suffered a compensable injury. The Commission, however, reversed the ALJ's decision, finding that Cossey failed to prove the following: that she sustained an accidental injury causing physical harm to her body arising out of and in the course of her employment with Gary

Thomas Racing Stables; that there was a specific incident identifiable by time and place of occurrence; and that she sustained a compensable injury by medical evidence supported by objective findings.

The sole issue on appeal is whether there is sufficient evidence to support the Commission's decision. When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Liaromatis v. Baxter County Reg'l Hosp.*, 95 Ark.App. 296, 236 S.W.3d 524 (2006) (citing *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Crossett Sch. Dist. v. Gourley*, 50 Ark.App. 1, 899 S.W.2d 482 (1995)). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark.App. 5, 864 S.W.2d 871 (1993). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown*, 53 Ark.App. 30, 917 S.W.2d 550 (1996). The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party. *Keller v. L.A. Darling Fixtures*, 40 Ark. App. 94, 845 S.W.2d 15 (1992).

To receive workers' compensation benefits, a claimant must establish (1) that the injury arose out of and in the course of the employment, (2) that the injury caused internal or external harm to the body that required medical services, (3) that there is medical evidence supported by objective findings establishing the injury, and (4) that the injury was caused by a specific

incident and is identifiable by the time and place of the occurrence. Ark.Code Ann. § 11–9–102(4) (Supp.2007). As the claimant, appellant bears the burden of proving a compensable injury by a preponderance of the credible evidence. *See* Ark.Code Ann. § 11–9–102(4)(E)(i) (Supp.2007). Compensation must be denied if the claimant fails to prove any one of these requirements by a preponderance of the evidence. *Rippe v. Delbert Hooten Logging*, 100 Ark. App. 227, 266 S.W.3d 217 (2007) (citing *Mikel v. Engineered Specialty Plastics*, 56 Ark.App. 126, 938 S.W.2d 876 (1997)).

■ The Commission found that there were no objective medical findings to support Cossey's horse bite. We disagree with this particular finding by the Commission. Cossey argues, and we agree, that there were objective medical findings to support the existence of her injury. Cossey was treated by the track doctor with antibiotics and a tetanus shot. Dr. Tucker's report noted that he observed a "scar" and a "clear indentation" on her arm during his initial exam and described her injury as "clear skin lesions where the horse bite left areas of the skin that did not heal properly." Also in his reports, Dr. Tucker opined that "[t]he patient has suffered a severe injury, with some neurological problems such [as] the atrophy of the muscle related to the horse bite." In a posttreatment letter, Dr. Tucker stated "[t]here is no doubt the two horse bites produced some damage to the arm, and one can see the skin lesion still remaining.... There is very localized atrophy, possibly related to damage to the circumflex branch of the radial nerve." The findings of skin lesions and muscle atrophy were objective findings. *See Smith v. County Market/Southeast Foods*, 73 Ark. App. 333, 44 S.W.3d 737 (2001) (where doctor observed muscle spasm and muscle atrophy supporting claimant's injury, this

court found that involuntary muscle contraction or tension and shortness in the muscles has been held to be an "objective finding" and reversed the Commission).

■ While we disagree with the Commission's finding that there was no objective medical evidence to support Cossey's horse bite, and hold that in this case objective findings did exist, this does not require reversal. The Commission also found that Cossey failed to establish a causal connection between the horse bite and her current need for benefits. "In order to prove a compensable injury [the claimant] must prove, among other things, a causal relationship between his employment and the injury." *Searcy Indust. Laundry, Inc. v. Ferren,* 82 Ark.App. 69, 72, 110 S.W.3d 306, 308 (2003) (quoting *Wal–Mart Stores, Inc. v. Westbrook,* 77 Ark.App. 167, 171, 72 S.W.3d 889, 892 (2002)). The determination of whether a causal connection exists is a question of fact for the Commission to determine. *Jeter v. B.R. McGinty Mech.,* 62 Ark.App. 53, 968 S.W.2d 645 (1998). The Commission acknowledged that the doctors who treated Cossey more than a year after her horse bite noted "scars," "indentations," and "muscle atrophy." The Commission further acknowledged the 2006 assessment of "neuropathy" and "radial palsy." Nevertheless, the Commission found that the record showed no causal connection between the noted physical scars and the horse bites from a year earlier. Nor did the record demonstrate a causal connection between the February 2005 horse bites and the March 2006 assessment of radial palsy or the March 2006 electromyo graphic abnormality of a "decreased recruitment in radial innervated musculature of the left upper extremity."

Moreover, the Commission found Cossey's testimony as to the details of her injury to be not credible. The Commission recognized Dr. Crenshaw's assessment of the claimant and his statement that "Janis Cossey has left shoulder & arm injury from horse bite & cannot lift or be active with left arm." However, the Commission gave Dr. Crenshaw's opinion minimal weight because his opinion was based on Cossey's statement of her history, and her testimony was not credible. The Commission also addressed Dr. Tucker's assessment and treatment of Cossey; however, the Commission found that Dr. Tucker's opinion, which was also based solely on Cossey's explanation of her injury, was not supported by the record. Nor did the record show that the "downsloping acromion" in claimant's left shoulder was in any way related to the bite.

■ The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Workers' Compensation Commission; the Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Farmers Coop. v. Biles,* 77 Ark.App. 1, 69 S.W.3d 899 (2002). The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Homes v. Beard,* 82 Ark.App. 607, 120 S.W.3d 160 (2003) (citing *Estridge v. Waste Management,* 343 Ark. 276, 33 S.W.3d 167 (2000)). Moreover, and importantly, the Commission is not bound by a doctor's opinion that is based largely on facts related to him by the claimant where there is no sufficient independent knowledge upon which to corroborate the claimant's claim. *Roberts v. Leo Hosp.,* 8 Ark. App. 184, 649 S.W.2d 402 (1983).

Here, the Commission's decision as to the causal connection between the horse bite and her need for benefits turned on the credibility and interpretation of Cos-

sey's testimony, the medical testimony, and the evidence. Deferring to the Commission on credibility determinations, as we must, we find that there is substantial evidence to support the Commission's finding that Cossey failed to prove that a causal relationship existed between the horse bite and her need for benefits.

Affirmed.

ROBBINS and MARSHALL, JJ., agree.