

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-292

AUBREY JAY INGRAM
APPELLANT

V.

TYSON MEXICAN ORIGINAL
APPELLEE

Opinion Delivered September 30, 2015

APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. F300698 & G306131]

AFFIRMED

## BART F. VIRDEN, Judge

Appellant Aubrey Jay Ingram appeals from the denial of his claim for benefits related to a left-shoulder injury, which he asserts was a natural consequence of a compensable right-shoulder injury he sustained in 2001. While the administrative law judge (ALJ) awarded benefits, the Workers' Compensation Commission (Commission) reversed upon finding that Ingram had failed to prove a causal connection between the two injuries. Ingram argues that substantial evidence does not support the Commission's decision. We disagree and affirm.

### I. *Factual Background*

Ingram began working for appellee Tyson Mexican Original as a maintenance mechanic in 1995. On June 7, 2001, he sustained a compensable injury to his right shoulder and thumb from a slip-and-fall accident. Ingram underwent surgery in October 2001 for a right rotator-cuff tear followed by another similar surgery in April 2002. He returned to work on "one arm restricted duty." Ingram had another surgery on his right shoulder in

September 2002, was returned to work on September 23, 2002, and was prohibited from using his right arm. He was given a 4 percent impairment rating to the body as a whole on December 11, 2002, and ordered to not lift or carry anything weighing over two pounds and to not work at or above shoulder level.

The results of a functional capacity evaluation conducted on January 16, 2003, indicated that Ingram could perform physical demands in at least the medium category for work with occasional lifting.

In March 2004, Ingram underwent a revision rotator-cuff repair, and in December 2004 he had surgery on his right thumb. He was returned to work in March 2005 on restricted duty.

The results of an upper-limb functional capacity evaluation conducted on June 13, 2005, indicated that Ingram was physically capable of performing work in the medium category, that overhead and resistive reaching with the right upper extremity should be secondary job duties, that resistive use of the right upper extremity should be limited to twenty pounds, that the majority of tasks should be performed with his right elbow at his side, and that significantly repetitive or resistive pinching or gripping should be limited to occasional job tasks.

Ingram left his employment with appellee in July 2005 and was hired by Roll-Off Services where he worked as a machine operator. In April 2006, Ingram slipped and fell at work, injuring his left knee, and his employment with Roll-Off Services ended.

In June 2006, Ingram underwent a right carpal tunnel release and surgery on his right

SLIP OPINION

thumb. The doctor determined that Ingram had reached maximum medical improvement (MMI) on August 28, 2006, and assigned a 7 percent impairment rating to his right hand. Ingram then began doing part-time maintenance work at an apartment in addition to some lawn care.

Ingram participated in another functional capacity evaluation on August 8, 2007, and the results indicated that Ingram could perform work in the heavy physical demands category, that he could handle activities with an occasional bi-manual lift/carry up to eighty pounds, and that he had the ability to lift thirty pounds with the right upper extremity and thirty-five pounds with the left upper extremity when lifting to shoulder level.

In October 2009, Ingram saw Dr. Wesley K. Cox, an orthopaedic surgeon specializing in disorders of the shoulder. Dr. Cox gave Ingram injections for his right shoulder. Ingram sought additional medical treatment by Dr. Cox, which appellee controverted. Ultimately, it was approved by the Commission, and Dr. Cox performed a right-biceps tenodesis on March 27, 2012. In a follow-up visit on May 2, 2012, it was noted that Ingram had experienced pain while pulling his pants down to use the toilet and that his arm felt better "except trying to button his pants." Dr. Cox advised that he not lift, push, or pull anything weighing over two pounds and that he discontinue using the right-shoulder sling. On August 6, 2012, it was noted that Ingram still experienced pain on the top part of his right shoulder but that he was doing his arm exercises at home.

In Dr. Cox's notes dated January 9, 2013, he first reported that Ingram had complained of left-shoulder pain. On April 1, 2013, Dr. Cox found that Ingram was at MMI

and qualified for light or sedentary duty. In June 2013, Dr. Mark Bonner diagnosed a rotator cuff syndrome of his left shoulder. Ingram followed up with Dr. Cox on June 24, 2013, and Dr. Cox wrote, "The continued left shoulder pain is due to being used as the work horse since I've known Jay. It seems reasonable that this pain is due to overuse."

On July 31, 2013, claimant reported an injury that occurred on February 1, 2013, specifically, he wrote, "My left shoulder is injured as a result of overuse because of my compensable right shoulder injury." In November 2013, Ingram saw Dr. Cox who reported that Ingram's left-shoulder pain was "very likely due to over use from long term right shoulder problem." An MRI on March 20, 2014, indicated that Ingram had a near full-thickness or full-thickness tear on his left shoulder. Dr. Cox wrote, "Given history of the right shoulder, it is certainly reasonable to suspect this is an overuse problem." Ingram sought additional medical treatment for his left shoulder, which appellee denied.

## II.  *Hearing on Compensability*

Ingram testified that he was placed on light duty in his employment with Tyson after the first four right-shoulder surgeries. He stated that he drew disability following the last surgery. Ingram denied suffering any specific injuries to his left shoulder. He described how his left shoulder began bothering him in early 2013 and how he believed that the gradual pain resulted from its overuse. He said, "I was trying to compensate, because I am not left-handed, and I had to stop using my right arm and use my left arm." According to Ingram, in 2011 and 2012 he used his left shoulder for "everything," such as getting dressed, microwave cooking, doing laundry, making beds, running the vacuum, taking out the trash,

SLIP OPINION



grocery shopping, and changing light bulbs.

While the ALJ found that Ingram's left-shoulder condition was a compensable consequence of his right-shoulder injury, the Commission determined that Ingram had failed to prove that he sustained a compensable injury to his left shoulder due to overuse related to his 2001 right-shoulder injury.

### III.  *Argument*

Ingram argues that the 2014 MRI shows an objective finding of injury to his left shoulder and that Dr. Cox made the causal connection between the overuse of his left shoulder and his compensable right-shoulder injury. Ingram contends that "[c]ommon sense would dictate if a person is using one arm to do the work of two arms, over time the arm in constant use will be stressed." Ingram maintains that he credibly testified that, after five surgeries to his right shoulder, he stopped using his right arm altogether and used his left arm for everything. According to Ingram, the Commission should have given great weight to Dr. Cox's opinion as his long-term treating shoulder specialist who was very familiar with him and his symptoms. He points out that there was no opposing medical opinion and asserts that "there is nothing that can explain this injury except the constant use of the left arm following his right sided injury at work."

### IV.  *Standard of Review and Law*

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an injured employee such medical services as may be reasonably necessary in connection with the injury received by the employee. When the primary injury is shown to

have arisen out of and in the course of employment, the employer is responsible for any natural consequence that flows from that injury. *Nichols v. Omaha Sch. Dist.*, 2010 Ark. App. 194, 374 S.W.3d 148. However, for this rule to apply, the basic test is whether there is a causal connection between the injury and the consequences of such. *Id.* The burden is on the employee to establish the necessary causal connection. *Id.* The determination of whether a causal connection exists between two episodes is a question of fact for the Commission. *Jeter v. B.R. McGinty Mech.*, 63 Ark. App. 53, 968 S.W.2d 645 (1998).

On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Id.* Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.* Where a claim is denied, the substantial-evidence standard requires us to affirm the Commission if its opinion displays a substantial basis for the denial of relief. *Id.* It is the function of the Commission to determine the credibility of the witnesses and the weight given to their testimony. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*



V.  *Discussion*

In denying Ingram's claim, the Commission noted that there was no evidence corroborating Ingram's testimony that he was forced to stop using his right arm or that he had overused his left shoulder. We note that shortly after the surgery in March 2012, Ingram was still using his right arm for daily activities and was even exercising his arm. The Commission noted that there was also no evidence demonstrating that the full-thickness tear shown on the March 2014 MRI resulted from Ingram's overusing his left shoulder. In this regard, we note that the chores Ingram described exclusively using his left arm for were not typically overly strenuous activities. The Commission specifically found that Ingram was not a credible witness. The Commission wrote,

> Just as the claimant was not a credible witness, the probative evidence of record does not corroborate Dr. Cox's conclusion that the claimant's left shoulder pain was "likely due to over use from long term right shoulder problems." Dr. Cox's assertion in this regard is not supported by the record and is entitled to minimal evidentiary weight.

The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Cossey v. Gary A. Thomas Racing Stable*, 2009 Ark. App. 666, 344 S.W.3d 684. The Commission is not bound by a doctor's opinion that is based largely on facts related to him by the claimant where there is no sufficient independent knowledge upon which to corroborate the claimant's claim. *Id*. Because Dr. Cox appears to have relied primarily on Ingram's statements concerning the use of his arms in forming his opinion on causation, the Commission assigned it very little weight. Viewing the evidence in the light most favorable to the Commission's findings and deferring to the Commission on credibility determinations, we hold that the

SLIP OPINION

SLIP OPINION

Commission's decision displays a substantial basis for the denial of benefits. Ingram failed to carry his burden of proving that a left-shoulder arthroscopy or rotator-cuff repair was reasonably necessary in connection with the 2001 compensable right-shoulder injury. Ark. Code Ann. § 11-9-508(a). Therefore, we affirm.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *E. Diane Graham* and *Joseph Karl Luebke*, for appellee.