

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
No. CV–15–590

| | |
|---|---|
| GLENN W. MYERS<br><br>APPELLANT | **OPINION DELIVERED** DECEMBER 16, 2015 |
| V. | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| CITY OF ROCKPORT, ARKANSAS, ARKANSAS MUNICIPAL LEAGUE WC TRUST, DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br><br>APPELLEES | [NO. G002803]<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Glenn W. Myers appeals the May 28, 2015 opinion of the Arkansas Workers' Compensation Commission (Commission), finding that he failed to prove that he sustained a compensable head injury and that he proved he sustained wage-loss disability of thirty percent. On appeal, he argues that substantial evidence does not support the Commission's decision that (1) he did not sustain a compensable injury to his brain; (2) he is not permanently and totally disabled; and (3) his healing period ended on February 1, 2012, rather than March 11, 2013. We affirm.

### I. *Statement of Facts*

At the hearing on the issues of compensability of appellant's head injury, the date he reached the end of his healing period, entitlement to additional temporary total-disability benefits (TTD) from February 2012 until March 2013, and entitlement to permanent total-

SLIP OPINION

disability benefits (PTD) or additional wage-loss benefits, appellant claimed that on April 1, 2010, while working as a police officer for appellee, City of Rockport (the City), he injured both shoulders and sustained a closed-head injury in an automobile accident. Appellant alleged that he was permanently and totally disabled or was entitled to additional wage loss as a result of his injuries. He also claimed that he had reached the end of his healing period on March 11, 2013.

In the accident, a full-sized pickup truck struck appellant's vehicle. The people in the pickup were killed on impact. Appellant's car spun multiple times before striking a cinder-block wall. The initial treating surgeon, Dr. Lorio, reported on April 8, 2010, that appellant had injured his right shoulder. Dr. Lorio did not report any symptoms or signs of injury related to appellant's head. Dr. Lorio specifically noted, "Patient is a thirty-four-year-old police officer who was in an MVA injuring his shoulder and MRI confirmed a rotator cuff tear and AC arthrosis." Dr. Lorio performed right-shoulder surgery on April 16, 2010.

On June 8, 2011, over one year following the compensable injury, appellant informed Dr. Lorio that he was suffering from symptoms in his left shoulder. There was no indication of a head injury. Dr. Lorio noted appellant's complaints of "whole body soreness" following the April 1, 2010 accident, but Dr. Lorio did not report an injury to appellant's head. Dr. Lorio performed left-shoulder surgery in October 2011 and eventually assigned a permanent rating for appellant's left shoulder. Dr. Lorio opined on February 1, 2012, that appellant had reached maximum medical improvement (MMI).

Appellant claimed that he began having headaches after the accident. Appellant first saw Dr. Baskin on December 10, 2012, and had a brain MRI on February 21, 2013. On March 11, 2013, Dr. Baskin noted the finding on the MRI that he believed represented scarring and stated that appellant was at the end of his healing period.

On referral from Dr. Baskin, neuropsychologist Dr. A.J. Zolten examined appellant on February 11, 2013, and explained in a report of that date and a supplemental report dated March 13, 2014, how appellant's measured cognitive deficits were related to a coup-contracoup injury and the finding on the MRI.

The City sent appellant for a vocational rehabilitation assessment on September 11, 2013. The vocational-rehabilitation consultant, Heather Taylor, stated that it was unlikely appellant would ever be able to return to competitive employment. The City controverted the compensability of appellant's closed-head injury, contending that the injury to appellant's brain was not supported by objective findings. The City claimed that appellant was not permanently and totally disabled but that, due to his shoulder injuries, he sustained wage-loss disability of thirteen percent. The City also contended that appellant's healing period had ended on February 1, 2012, and controverted his claim to additional TTD.

The ALJ found in favor of appellant, finding that he had proved by a preponderance of the evidence that he had sustained a compensable brain injury, that he was permanently and totally disabled, and that he was entitled to additional TTD from February 2012, to March 11, 2013. The City appealed to the Workers' Compensation Commission, and the Commission found that appellant had not proved that he had sustained a compensable head

3



or brain injury and had not proved that he was permanently and totally disabled. Instead, the Commission found that appellant had sustained wage-loss disability of thirty percent in excess of his bilateral-shoulder ratings. The Commission stated as follows:

> In the present matter, there is no probative evidence of record corroborating Dr. Zolten's assertion that the claimant was suffering from cortical dysfunction resulting from a "coup-contracoup" injury. Instead, the evidence of record demonstrates that the claimant injured his right and left shoulders in the April 1, 2010 motor vehicle accident. There is no evidence of record showing that the claimant also injured his head. The information given an MRI examiner on February 21, 2013 was "history of traumatic brain injury in April 2010." Again, there is no probative evidence of record demonstrating that the claimant suffered a traumatic brain injury on April 1, 2010. Additionally, the record does not show that the finding of "a small focus of gliosis" in the MRI was causally related to the April 1, 2010 motor vehicle accident. The Commission recognizes the opinions of Dr. Baskin, including Dr. Baskin's determination in July 2013 of "emotional and behavioral impairments" related to an alleged traumatic brain injury. It is within the Commission's province to weigh all of the medical evidence and to determine what is most credible. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). In the present matter, the record does not show that the claimant injured his head or brain on April 1, 2010. The Full Commission therefore assigns minimal evidentiary weight to the opinions of Dr. Baskin and Dr. Zolten in the present matter.

Because the Commission found that appellant's brain injury was not compensable, appellant was not awarded the claimed additional TTD after the shoulder surgeon had released him as being at MMI on February 1, 2012. A timely appeal followed.

## II. *Applicable Law*

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an injured employee such medical services as may be reasonably necessary in connection with the injury received by the employee. When the primary injury is shown to have arisen out of and in the course of employment, the employer is responsible for any

natural consequence that flows from that injury. *Ingram v. Tyson Mexican Original*, 2015 Ark. App. 519, at 5–6. However, for this rule to apply, the basic test is whether there is a causal connection between the injury and the consequences of such. *Id.* The burden is on the employee to establish the necessary causal connection. *Id.* The determination of whether a causal connection exists between two episodes is a question of fact for the Commission. *Id.*

On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Id.* Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.* Where a claim is denied, the substantial-evidence standard requires us to affirm the Commission if its opinion displays a substantial basis for the denial of relief. *Id.* It is the function of the Commission to determine the credibility of the witnesses and the weight given to their testimony. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*

The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Cossey v. Gary A. Thomas Racing Stable*, 2009 Ark. App. 666, 344 S.W.3d 684. The Commission is not bound

SLIP OPINION



by a doctor's opinion that is based largely on facts relayed to him by the claimant where there is no sufficient independent knowledge upon which to corroborate the claimant's claim. *Id.*

### III. *Compensability*

In a workers' compensation case, the claimant has the burden of proving by a preponderance of the evidence that his claim is compensable, i.e., that his injury was a result of an accident that arose in the course of his employment, and that it grew out of, or resulted from, the employment. *Bates v. Frost Logging Co.*, 38 Ark. App. 36, 827 S.W.2d 664 (1992). He must prove a causal connection between the work-related accident and the later disabling injury. *Id.* It is not essential, however, that the causal relationship between the accident and disability be established by medical evidence. *Gerber Prods. v. McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985). Questions of causation in compensation cases must be answered in light of the facts peculiar to each case, and the answer in one is of little aid to an answer in another. *Pace Corp. v. Burns*, 251 Ark. 311, 472 S.W.2d 78 (1971).

Appellant argues that he presented evidence to prove by a preponderance that he sustained a compensable injury. He recites the facts of the accident and claims that he began to have headaches and cognitive issues after the accident, and they were not addressed until December 10, 2012. Regardless of the fact that it was two years after the accident, he maintains that he proved a compensable brain injury due to his accident. Arkansas Code Annotated section 11-9-102(4)(D) requires that a compensable injury must be established by medical evidence supported by objective findings. "Objective findings" are those findings

which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i).

Appellant contends that the only evidence of record demonstrated that his cognitive deficits, which were supported by objective signs of injury, were caused by the accident. He claims that no evidence exists to contradict any of the evidence he presented, and he claims that this is a notable fact lending credence and weight to his evidence. *See Bates*, *supra*. He contends that the evidence was that he worked for four years at this job before the accident and loved it, functioning at a high level. He tried to return after the accident and could not due to his shoulders, and because his thoughts were "cloudy." He admits that he did not see Dr. Baskin for the headaches and cognitive difficulties until more than two years after the accident but contends that he was addressing one problem at a time: right-shoulder surgery April 16, 2010; June 8, 2011, left-shoulder surgery. He explains that it took time for the left-shoulder injury to become noticeable after the right shoulder was healing, as he was focused on the right shoulder.

He contends that a similar rationale exists for the brain injury. He asserts that Dr. Zoltan's tests showed deficits consistent with a coup-contracoup brain injury. Neuropsychological testing is not enough to establish the injury, *Watson v. Tayco, Inc.*, 79 Ark. App. 250, 86 S.W.3d 18 (2002); therefore, appellant points to Dr. Baskin's record noting that the test results were consistent with traumatic brain injury and his agreement to do an MRI. Dr. Baskin also noted that if residual scarring were present, it would be consistent with traumatic brain injury. The MRI revealed a "very small focus of high signal within the deep

7

white matter at the right frontal lobe felt to represent a small focus of gliosis of scarring." Appellant argues that this is an objective sign of injury, and this, combined with the neuropsychological testing, constitutes objective findings. Appellant claims that these findings and opinions were disregarded by the Commission.

The City argues that the Commission correctly determined that appellant did not sustain a compensable injury to his brain. The City argues that Dr. Zolten's conclusions were based largely on appellant's response to test questions presented to him, the doctor's observations, and statements made by either appellant or his wife. The doctor noted that appellant's "thought processes were clear, logical and coherent" and that his "speech and language skills were intact to observation." The test results and answers all came from responses made under appellant's voluntary control. When asked to clarify any objective findings of traumatic injury related to the motor-vehicle accident, the doctor responded that while neuropsychology was an empirical science that utilized standardized techniques for measuring functional brain capacity and injury, neuropsychology was inexact to the extent that no direct measures of the brain are obtained, and therefore, the entire work of it is based on the inference that observed functioning directly related to inferred brain functioning.

He said that his comments on the vector of injury were his best clinical estimate and did not necessarily mean that the vector occurred or did not occur, or whether it was or was not related to MRI findings because coup-contracoup injuries often generate bilateral findings, and often the contracoup injury is more severe than the site of impact. Thus, he was only guessing as to the cause of the MRI finding.

Dr. Baskin's review of his medical records showed a normal head CT. The City notes that the MRI revealed no acute finding of traumatic brain injury or residual accumulation of cerebrospinal fluid in the ventricles of the brain. The MRI simply revealed to Dr. Baskin that "this may represent a small focus of gliosis." His opinion was not stated within a reasonable degree of medical certainty. Arkansas Code Annotated section 11-9-102(16)(B) requires that medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty. City contends that the Commission gave the appropriate weight to Dr. Zolten's conclusions and guesswork, as well as to Dr. Baskin's opinions. Guesswork is not the standard.

Based on the evidence that there were no complaints regarding appellant's head or brain having been injured in the accident until more than two years following the event, and there was no evidence that the MRI finding was related to appellant's accident, reasonable minds could have concluded, as the Commission did, that appellant did not prove the necessary causal connection. Accordingly, we affirm on the issue of compensability.

## IV. *PTD*

PTD is defined by statute as the inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(1). The employee bears the burden of proving the inability to earn any meaningful wage. Ark. Code Ann. § 11-9-519(e)(2). In considering claims for permanent partial-disability benefits in excess of the percentage of permanent-physical impairment, the Commission may take into account such factors as the employee's age,

education, work experience, and other matters reasonably expected to affect his or her future earning capacity. Ark. Code Ann. § 11-9-522(b)(1). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Thompson v. Mountain Home Good Samaritan Vill.*, 2014 Ark. App. 493, 442 S.W.3d 873.

Appellant contends that because the record supports the conclusion that he has a compensable brain injury and that he cannot return to gainful employment, the Commission's decision that he is not permanently and totally disabled is not supported by substantial evidence. He argues that the only evidence of record demonstrates that he cannot sustain gainful employment. The vocational-rehabilitation counselor described his limitations: significant memory problems; poor concentration; word-finding deficits; communication difficulties; inability to follow through with a task. He also has persistent fatigue and problems with anger and social interaction. He asserts that his wife's testimony corroborates the counselor's findings.

The City contends that appellant is not entitled to PTD but is entitled to the wage loss determined by the Commission. The City argues that the preponderance of the evidence clearly demonstrates that appellant is unable to return to work as a police officer but does not show that he is unable to return to other employment other than for reasons allegedly attributable to a traumatic brain injury. Because we have upheld the Commission's determination that appellant's head-injury claim is not compensable, the wage-loss award is affirmed.

SLIP OPINION

## V. *TTD and Healing Period*

Temporary total disability is appropriate during the healing period in which an employee suffers a total incapacity to earn wages. *Crawford v. Superior Indus.*, 2009 Ark. App. 738, 361 S.W.3d 290. The healing period is that period for healing of an accidental injury and will continue until the employee is as far restored as the permanent character of his injury will permit, and ends when the underlying condition causing the disability has become stable and no treatment will improve that condition. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). The claimant has the burden to show by a preponderance of the evidence that he remains in the healing period. *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591(2008).

Appellant argues that Dr. Lorio released him as having reached MMI on his shoulders on February 1, 2012. After that, his only medical attention was for his brain injury. Thus, the date his healing period ended should be determined by the compensability of his brain injury. Because we affirm the Commission's denial of compensability, we must also affirm its decision that appellant's healing period ended on February 1, 2012.

Affirmed.

GLOVER, HIXSON, and HOOFMAN, JJ., agree.

ABRAMSON and KINARD, JJ., dissent.

**RAYMOND R. ABRAMSON, Judge, dissenting.** On April 1, 2010, while working as a police officer for the City of Rockport (the City), Glenn Myers was seriously

injured in a collision. In this workplace incident, a full-sized pickup truck struck Myers's vehicle. The people in the truck were both killed upon impact. Myers's police car spun eight times before striking a cinder-block retainer wall. Myers contends he sustained a closed-head injury and is permanently and totally disabled because of the accident.

The Arkansas Workers' Compensation Commission (Commission) found that Myers proved he had sustained wage-loss disability in the amount of thirty percent but that he failed to prove that he sustained a compensable head injury. The majority opinion of this court agreed with the Commission, citing the highly deferential standard of review afforded the Commission's decision. I respectfully dissent for the following reasons.

In the Commission's 2–1 opinion reversing the administrative law judge's decision that Myers had proved by a preponderance of the evidence that he sustained a compensable brain injury, was permanently and totally disabled, and was entitled to additional temporary-total disability from February 2012 to March 11, 2013, the Commission found that "there is no evidence of record showing that" appellant injured his head in the accident. This, simply put, is clearly erroneous.

This court has found that it is reversible error for the Commission to state that there is no evidence on an issue when such evidence in fact appears in the record. *Vijil v. Schlumberger Tech. Corp.*, 2011 Ark. App. 87. Here, there is ample evidence that Myers's head injury was compensable. Furthermore, there is no evidence that offers an alternate reason for his injury. Myers testified that he had vivid memories of his treatment after the accident. When he was removed from the vehicle, he could not walk. At the emergency

room, he had complaints of pain in his shoulders, head, chest, and all over his body. The medical records show that the focus of his treatment in 2010 was his right-shoulder injury, and then in June 2011, the focus was on his left-shoulder injury. The pain in his head, neck, and back was not addressed during those treatment periods.

In December 2012, Myers was referred to Dr. Barry Baskin, a physical medicine and rehabilitation specialist, for treatment of neck pain, headaches, and cognitive issues, which Dr. Baskin noted had never been addressed with medical treatment. His headaches and neck pain had been present since the accident; moreover, his headaches were severe and daily. He also had memory issues and difficulty concentrating. He was quick to anger and easy to tire. He had episodes of dizziness and being light-headed. He was forgetful with everyday tasks. Dr. Baskin arranged for a neuropsychological evaluation by Dr. Zolten, a neuropsychologist. Dr. Zolten ran several tests that showed deficits consistent with a coup/contracoup brain injury.

The majority cites to *Watson v. Tayco Inc.*, 79 Ark. App. 250, 86 S.W.3d 18 (2002), and its holding that neuropsychological testing is not enough to establish a brain injury. If the evaluation had stopped after Dr. Zolten's exam, the evidence of record in this case would have been insufficient to establish a compensable brain injury. The law requires more than the neuropsychological testing to prove a brain injury. Dr. Baskin's record of the visit with Myers after the neuropsychological testing notes the results being consistent with traumatic brain injury. Myers had an MRI in February 2013, which showed "a very small focus of high signal within the deep white matter at the right frontal

13

lobe felt to represent a small focus of gliosis scarring." In March 2013, Dr. Baskin saw Myers again and reviewed the MRI and Dr. Zolten's observation of language-based deficits, including poor verbal abstraction, weaker-than-expected auditory recall, and verbal fluency. Dr. Baskin also stated that he was confident that the results of Myers's testing and evaluation showed that Myers's head injury was a result of the high-impact collision, specifically deeming the testing and evaluation legitimate and noting that it was not manipulated by Myers.

Myers testified as to his significant limitations. His wife and his mother also testified. The testimony reflects the dramatic change in the claimant's mental abilities, personality, and ability to function. He was no longer the person he was prior to the accident. Myers has medical evidence, supported by objective findings, of a traumatic brain injury. As the dissenting commissioner wrote in his opinion, "In layman's terms, the claimant's brain was damaged when it bounced against the back of his skull (the coup) and rebounded forward against the front of his skull (the contracoup)." The Commission blatantly disregarded this evidence, and the City provided no counter evidence to explain the cause of the injury.

The City's argument that the evidence in the record falls short in establishing a compensable injury to the claimant's brain and that there is no objective finding of injury is flatly refuted by the MRI. That test is objective evidence of injury to Myers's brain, and it was presented. The law requires that the medical evidence of the injury and impairment be supported by objective findings. *Singleton v. City of Pine Bluff*, 97

14

Ark. App. 59, 244 S.W.3d 709 (2006). The medical records, combined with the facts that Myers has had memory gaps of time beginning at the scene of the accident, that he has had headaches and cognitive difficulties since the accident, and that the neuropsychological testing showed deficits, demonstrates that he has proved a compensable brain injury as a result of his April 1, 2010 collision. No contrary evidence exists to explain the findings on the brain MRI or Dr. Zolten's testimony. While the Commission is not required to accept even uncontroverted evidence, it may not arbitrarily disregard it either. *Edens v. Superior Marble & Glass*, 364 Ark. 487, 58 S.W.3d 369 (2001). Here, the Commission has arbitrarily disregarded the findings and opinions of Drs. Baskin and Zolten.

The Commission's conclusion is not supported by substantial evidence. Even viewing all the evidence in a light most favorable to the Commission's opinion, still leads to the conclusion that Myers's brain injury is compensable. In the instant case, the Commission raised the bar to make the standard of proof an absolute medical certainty rather than reasonable medical certainty; this standard effectively makes it impossible to prove a compensable injury in a controverted case.

By allowing this higher standard and thereby setting an impossible bar, I cannot say that reasonable minds could have reached the Commission's conclusion based on the record presented. The majority's holding would appear to sound the death knell for any future brain injury of a claimant that did not manifest immediately upon the occurrence and was not addressed by medical personnel even though other severe injuries took precedence for treatment. The Commission was not required to believe the evidence

SLIP OPINION

presented in this case, but it was required to consider it. I would therefore reverse and remand this case for further consistent proceedings.

Accordingly, I dissent.

KINARD, J., joins.

*Lane, Muse, Arman & Pullen*, by: *Sherri Arman McDonough*, for appellant.

*J. Chris Bradley*, for appellees.