Dianna L. WATSON *v.* TAYCO, INC. (McDonald's)

CA 01-1193                                    86 S.W.3d 18

Court of Appeals of Arkansas
Division I
Opinion delivered October 2, 2002

*Parker Law Firm*, by: *Tim S. Parker*, for appellant.

*Womack, Landis, Phelps, McNeil & McDaniel*, by: *Richard Lusby*, for appellee.

OLLY NEAL, Judge. The appellant, Dianna Watson, appeals from the decision of the Workers' Compensation Commission (Commission) denying her claim for workers' compensation benefits because she failed to establish a compensable closed-head injury. We affirm.

The appellant was employed at a McDonald's owned by the appellee, Tayco, Inc. On May 10, 2000, while restocking cartons at the fry station, the appellant was hit on the back of the head by a metal plate that fell from the top of the fry station. The appellant experienced such "immense" pain in her neck and head, that she sought treatment in the emergency room. When the appellant arrived at the emergency room, she complained of weakness, nausea, dizziness, blurred vision, and tingling in her upper extremities. An x-ray of the appellant's neck was performed, and she was given prescription medication.

After the accident, the appellant sought medical treatment several times. She was eventually referred to a neuropsychologist, Van Smith, Ph.D. After performing a neuropsychological evaluation, Smith diagnosed appellant as suffering an "organic brain syndrome, secondary close head injury." The appellant was also evaluated by appellee's neuropsychologist, Gary Souheaver, Ph.D. Souheaver also performed a neuropsychological evaluation, and he diagnosed the appellant as suffering from emotional distress.

The appellee controverted the appellant's claim for workers' compensation benefits, and a hearing was held on December 7, 2000. At the hearing, the appellant testified that after the accident she began experiencing problems with her balance, headaches, memory problems, and problems with depth perception. She also testified that her speech pattern had changed. The appellant further testified that prior to the accident she had never experienced any mental or emotional problems.

Billie Pilalas, appellant's mother, testified that since the accident, appellant's speech has changed and she has memory problems. She stated that after the accident:

> [t]he first thing I noticed about her was the fact that when she went into a room, she would hold on to a side of a door like she was stepping off into an abyss or something. And the she would step high like she didn't know where she was going, what she was going into.

Pilalas explained that she thought this was the result of appellant's medication. On cross-examination, Pilalas stated that she first began to notice appellant's problems a couple of weeks after the

accident. She went on to say that "[e]ven before that, I had noticed her holding on to things as she walked through rooms." It's unclear as to whether this means before or after the accident.

The administrative law judge (ALJ) found that the appellant failed to prove by a preponderance of the evidence the requirements necessary to establish a compensable injury. The ALJ specifically found that the appellant "failed to establish a compensable closed head injury with medical evidence supported by objective findings." The Commission affirmed and adopted the decision of the ALJ. Appellant now appeals.

■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we affirm that decision if it is supported by substantial evidence. *Campbell v. Randal Tyler Ford Mercury*, 70 Ark. App. 35, 13 S.W.3d 916 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mays v. Alumnitec, Inc.*, 76 Ark. App. 274, 64 S.W.3d 772 (2001). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). In making our review, we recognize that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Wal-Mart Stores, Inc. v. Stotts*, 74 Ark. App. 428, 58 S.W.3d 853 (2001).

■ On appeal, appellant asserts that the Commission erred in finding that she failed to establish a closed-head injury with medical evidence supported by objective findings. The employee has the burden of proving a compensable injury. *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). "A compensable injury must be established by medical evidence supported by 'objective findings.'" Ark. Code Ann. § 11-9-102(4)(D) (Repl. 2002). "'Objective findings' are those findings which cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102-(16)(A)(i) (Repl. 2002).

■ The ALJ found that " the only findings contained in the record which suggests that the claimant sustained a closed head injury which has resulted in the problems that she has experienced is found in the results of the neuropsychological cognitive tests administered by Dr. Smith and by Dr. Souheaver." In *Wentz v. Service Master*, 75 Ark. App. 296, 57 S.W.3d 753 (2001), we noted that in other courts, neuropsychological testing standing alone is not sufficient evidence of a brain injury; there must be some other objective evidence of such an injury. *See also Sloogfors v. Haverstick-Borthwick Co.*, 44 Pa. D.&C. 4th 1 (2000). In *Wentz*, the appellant sustained a brain injury as a result of a work-related accident. We found that, in addition to the neuropsychological testing, there was other objective evidence of a brain injury. *See Wentz, supra*. This evidence included medical testimony besides that of the neuropsychologist that attributed the appellant's injury to her work-related accident.

■ Here, the only evidence suggesting that appellant sustained a compensable closed-head injury was found in the results of the neuropsychological testing; there was no other objective evidence establishing a closed-head injury. The results of the neuropsychological testing standing alone is not enough to establish a compensable injury; therefore we affirm the Commission. Because we hold that the appellant failed to establish a compensable injury, we do not reach her other arguments on appeal.

Affirmed.

BAKER, J., agrees.

BIRD, J., concurs.

S AM BIRD, Judge, concurring. I agree that this case should be affirmed because there was no objective evidence that supported Watson's claim of a head injury. I write separately, however, to express my concern about the majority's strained effort to distinguish *Wentz v. Service Master*, 75 Ark. App. 296, 57 S.W.3d 753 (2001). Instead of trying to distinguish *Wentz*, we should admit that *Wentz* was wrongly decided and overrule it.

In *Wentz*, this court was directly presented with the issue of whether the results of neuropsychological testing constituted "objective findings" as defined in Ark. Code Ann. § 11-9-102(16)(A)(i) (Supp. 1999). Rather than answering that question, the *Wentz* court dodged the issue by simply holding that "there was no evidence that suggested appellant manipulated the testing." However, to constitute "objective findings" under § 11-9-102(16)(A)(i), the inquiry is not whether *this* patient *did not* manipulate the results of *this* test *this* time, but whether the results of the testing "*cannot* come under the voluntary control of the patient." In other words, it is not an objective finding if the symptom detected by the physician or the response of the patient under examination is subject to the patient's control, and it is immaterial whether, in any given case, the patient, in fact, exercised such control. The objectivity of findings is not determined on a case-by-case basis by an analysis of whether the patient manipulated the testing. Rather, objective findings are those that *cannot* be manipulated by the patient; it is irrelevant whether the patient in each case chose to exercise or not to exercise such control.

After concluding that there was no evidence that the patient had manipulated the test results, the *Wentz* court went on to hold that in addition to the neuropsychological testing, there was "other objective evidence," establishing the injury, thereby implying that the result of neuropsychological testing is an objective finding when there is evidence that the patient did not manipulate the test results. As appellee argues, this determination by the *Wentz* majority erroneously equates "objective findings" to "reliable findings."

The "other objective evidence" in *Wentz* consisted of a doctor's opinion that Wentz suffered nausea and that light made her symptoms worse; two doctors' conclusions, without supporting objective evidence, that Wentz had suffered a closed-head injury; a doctor's report of behavioral and cognitive agitation and decreased intellectual capacity; and testimony of Wentz about memory problems, periodic headaches, anxiety and emotional changes. I do not agree that these are "objective findings" within the meaning of Ark. Code Ann. §11-9-102(16)(A)(i). Nausea, light sensi-

tivity, and headaches are all complaints of symptoms that the doctor must necessarily be told by the patient. Cognitive agitation, decreased intellectual capacity, anxiety, and emotional changes are all results of testing that is necessarily within the patient's control.

The *Wentz* court erroneously states that "objective findings are also defined as medical opinions stated with a reasonable degree of medical certainty," citing Ark. Code Ann. § 11-9-102(16)(B) and *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001), as its authority. I do not agree that this is an accurate interpretation of the statute or of the holding in *Freeman*. The only definition of "objective findings" in our workers' compensation law is contained in § 11-9-102(16)(A)(i) where it clearly states that "[o]bjective findings are those findings which cannot come under the voluntary control of the patient." Subsection (B) then sets forth the requirement that "[m]edical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty." The only reasonable meaning that can be attributed to subsection (B) is that medical opinions as to the existence of a compensable injury or permanent impairment must be stated to a reasonable degree of medical certainty. Clearly, the requirement cannot be reasonably interpreted to mean that a medical opinion stated to a reasonable degree of medical certainty, standing alone, constitutes an objective finding.

The *Wentz* court's reliance on *Freeman* is also misplaced. Although *Freeman* contains the questionable language that medical opinions stated to a reasonable degree of medical certainty are included within the definition of objective findings, the issue in *Freeman* was whether the medical opinions proffered were sufficiently certain and definite to establish that Freeman's injuries were *caused* by her work-related fall; our supreme court held that medical opinions stated with a reasonable degree of medical certainty can be considered objective evidence of a causal link between the injury and the work-related incident. Causation is not in issue in the case at bar. Rather, the issue here is solely the establishment of the existence and extent of a closed-head injury.

In the case at bar, the denial of Watson's workers' compensation claim was proper because there was no objective evidence establishing the existence of a closed-head injury. The only difference in this case and the *Wentz* case is that, in *Wentz*, in addition to the patient's responses to neurological testing, the doctors and this court accepted as reliable a laundry list of subjective complaints by the patient and considered them adequate to conclude that she had sustained a closed-head injury. Neuropsychological test results are not objective findings, regardless of the reliability of the results or the medical opinions interpreting them. Objective findings are only those that *cannot* come under the control of the patient, and the same evidence that is lacking in the case at bar was also lacking in *Wentz*. I advocate that *Wentz* was wrongly decided and that the court should utilize this opportunity to overrule *Wentz*, rather than distinguish it from the case at bar.