Marvin I. RIPPE *v.* DELBERT HOOTEN LOGGING
and American Interstate Insurance Co.

CA 06-1277                                          266 S.W.3d 217

Court of Appeals of Arkansas
Opinion delivered October 31, 2007

*Frederick S. Spencer,* for appellant.

*Michael E. Ryburn,* for appellees.

KAREN R. BAKER, Judge. Appellant appeals from a decision by the ALJ finding that appellant failed to prove the elements necessary to establish that he had an organic brain injury. The Commission affirmed the decision by the ALJ. Appellant has several arguments on appeal. First, he argues that the Commission's finding that he failed to establish by a preponderance of the evidence the elements necessary to establish a compensable organic brain injury was not supported by the evidence. Second, he argues that the evidence submitted by him establishes that the Executive Branch of

the State of Arkansas and private interests have exerted pressure on workers' compensation administrative law judges and Commissioners that has infringed upon their decision independence and resulted in actual bias and the appearance of bias in the decisions of the administrative law judges and Commissioners. Within his second point, appellant has two sub-points. His first sub-argument is that an administrative quasi-judicial procedure that does not provide safeguards to protect the decisional independence of hearing officers violates the separation-of-powers doctrine established by the Constitution of the State of Arkansas. His second sub-argument is that external pressure exerted by political and private interests upon the quasi-judicial administrative decision makers violates the due-process rights of the parties appearing before the agency and invalidates and renders void adjudicative procedure of the agency. We hold that the Commission properly found that appellant failed to prove the elements necessary to establish an organic brain injury, and we further hold that appellant's constitutional arguments, as presented in this case, have no merit. Accordingly, we affirm.

On March 15, 2004, appellant was working at Hooten Logging when he sustained a scalp laceration and elbow injury. The injury occurred when a tree fell from a logging truck, striking him and knocking him to the ground. On that particular day, appellant's boss was running a machine that "reaches out and grabs the log to put it on the truck." When his boss gave him the signal, he was expected to use a chain saw to trim the brush off the logs. Appellant explained that he was standing in the "safe zone" when his boss gave him the expected signal, and at that point he reached over to pick up the chain saw. "The next thing I knew, I was spitting dirt out of my mouth." Appellant did not remember that he had fallen to the ground, but he described the feeling of a severe headache and the feeling that his arm had been "ripped off [his] body." When he attempted to get up, he fell to the ground again. His boss directed him get into the pick-up truck so that he could take appellant to the doctor. Appellant stated that it was difficult to get to the truck because "the world was spinning" and he had blood all over his body. His scalp was "split open and flipped over, like [he] had been scalped" and "felt like it was on fire." Because the doctor's office was closed when they arrived, his boss took him to the emergency room at Baptist Health Medical Center in Heber Springs.

Appellant testified that since the injury, he forgets where he is going and has to have help remembering any appointments. He

no longer wants to be around people and has trouble when people are talking all at once around him. He has pain in his left arm, and it "hurts all the time." He also has trouble with his vision. When he turns his head, it is like "my vision's trying to get there." He struggles to read because the "letters move around." He also has trouble remembering what he just read. His ability to communicate has lessened since the injury, and he has trouble communicating his thoughts. He often forgets what he is doing and where he is going. Appellant testified that he has trouble with losing his balance. He stated that he did not have any of these issues before the injury.

He testified that he saw Dr. Blickenstaff , an orthopedic doctor, for treatment of his elbow injury. Dr. Blickenstaff released appellant in June 2004 and reported that he did not have a disability relating to his elbow injury. Appellant also saw an (unnamed) eye doctor whose report noted that appellant did not have any apparent "floaters" and that appellant did not sustain any "ocular injuries." The eye doctor prescribed glasses for appellant, but appellant testified that "they wouldn't get them for me." Appellant also saw Dr. Smith, a neurologist, and the CT Scan of appellant's head was normal.

On August 6, 2004, appellant was also seen by Dr. Vann Smith, a neuropsychologist, for evaluation of perceived cognitive difficulties. Dr. Vann noted at the beginning of his report that appellant's injury "resulted in a Grade III concussion with attendant confusion, spatial and temporal disorientation and affective lability." Dr. Vann ran various tests on appellant and concluded that appellant's test data revealed a number of abnormal findings consistent with the presence of impaired brain function. Dr. Vann diagnosed appellant with Organic Brain Dysfunction, Secondary to TBI; Cognitive Dysfunction, Non-Psychotic, Secondary to OBS; and Organic Brain Dysfunction Secondary to Axis III Condition(s). Dr. Vann recommended the following: referral to neurology and physiatry for additional evaluation and neurocognitive rehabilitation treatment planning; outpatient cognitive retraining/rehabilitation as clinically indicated; repeat neuropsychological test battery in six months to establish a data baseline from which to accurately assess the velocity/severity of any remaining neurocognitive symptoms and the efficacy of treatment; and that patient contact and become involved with Traumatic Brain Injury support groups sponsored by the Arkansas Brain Injury Association in his area.

Several of appellant's friends and former co-workers testified at the hearing. Robert Powell testified that prior to appellant's accident, appellant had worked for him for three years. After the injury, appellant attempted to work for Powell again. However, Powell described how appellant's personality had changed since the accident and that, unlike appellant's personality prior to the accident, appellant had become defensive and "sharp." Before the injury, appellant was able to "do complex things and he would help me figure things out. Now, he can't do any of that." "He can't remember anything, and he cannot focus on the plans."

Richard Lane also testified that after appellant's injury, he had short-term memory problems and was unable to understand what he was supposed to do at any given time. He testified that since the injury, appellant was depressed and felt like he had no purpose. Appellant became easily aggravated. He described appellant as having difficulty concentrating and unable to perform much physical activity. He stated that his condition had gotten consistently worse since the injury.

Another of appellant's co-workers, Doug Rouse, testified that appellant lived with Rouse and his family immediately following the injury, and during that time, appellant complained of problems with his arm, neck, head, back and massive body aches. He described appellant before the accident as a very hard working, very outgoing, easy to get along with, and friendly person. Since the accident, Rouse testified that appellant had suffered from memory problems and was not able to perform physical work. Appellant "is not the same person" since the accident. He was depressed and unhappy and did not do well in a crowd.

Jenna Jean Verdusco also testified that she saw a noticeable difference in appellant after the injury. Specifically, she testified that his memory was failing, and that he often could not remember things he told her. He lost his ability to "go from A to Z on a project." She stated that "[h]e can get something taken apart, but he can't get it put back together." She also recognized the fact that appellant's equilibrium was "off" and that he lost his balance often. She explained that after the injury, appellant moved away from other people and had isolated himself from his friends. She testified that she thought appellant was no longer employable.

After all the testimony and evidence presented at the hearing, the ALJ concluded that appellant's constitutional challenge was without merit and that appellant had failed to establish his

alleged organic brain injury by medical evidence supported by objective findings. The Commission affirmed the ALJ's findings, and appellant appeals the Commission's decision.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, its decision must be affirmed. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Normally, we only review the findings of the Commission and not those of the ALJ. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005). However, when the Commission adopts the conclusions of the ALJ, as it is authorized to do, we consider both the decision of the Commission and the decision of the ALJ. *Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark. App. 338, 107 S.W.3d 876 (2003).

To receive workers' compensation benefits, a claimant must establish (1) that the injury arose out of and in the course of the employment, (2) that the injury caused internal or external harm to the body that required medical services, (3) that there is medical evidence supported by objective findings establishing the injury, and (4) that the injury was caused by a specific incident and identifiable by the time and place of the occurrence. Ark. Code Ann. § 11-9-102(4) (Supp. 2007). As the claimant, appellant bears the burden of proving a compensable injury by a preponderance of the credible evidence. *See* Ark. Code Ann. § 11-9-102(4)(E)(i) (Supp. 2007). Compensation must be denied if the claimant fails to prove any one of these requirements by a preponderance of the evidence. *Mikel v. Engineering Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997). Questions concerning the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *White v. Gregg Agricultural Ent.*, 72 Ark. App. 309, 37 S.W.3d 649 (2001).

Appellant asserts that the Commission's finding that he failed to establish by a preponderance of the evidence the elements necessary to establish a compensable organic brain injury was not

supported by the evidence. A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 2007); *Crawford v. Single Source Transp. Fidelity & Cas. Ins. Co.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004). Objective findings are those findings which cannot come under the voluntary control of the patient, *Crawford, supra,* and are only necessary to establish the existence and extent of an injury, *Wal-Mart Stores, Inc. v. VanWagner,* 337 Ark. 443, 990 S.W.2d 522 (1999).

In the case before us, appellant relies primarily on Dr. Vann Smith's diagnosis of organic brain injury, which was based on neuropsychological testing performed on August 6, 2004. He also relies on his own testimony of his numerous symptoms, as well as the testimony of his long-time friends that he has suffered from numerous mental and cognitive problems since he was injured in 2004. However, neuropsychological testing, without more, is not adequate to establish organic brain injury by "objective findings" within the meaning of Ark. Code Ann. § 11-9-102(4)(D). *See Watson v. Tayco, Inc.,* 79 Ark. App. 250, 86 S.W.3d 18 (2002) (holding that the results of neuropsychological testing standing alone is not enough to establish a compensable injury); *but see Wentz v. Service Master,* 75 Ark. App. 296, 57 S.W.3d 753 (2001) (where we found that, in addition to the neuropsychological testing, there was other objective evidence of a brain injury, which included medical testimony besides that of the neuropsychologist that attributed the appellant's injury to her work-related accident). Such symptoms could clearly come under the voluntary control of the appellant and therefore, by statutory definition, do not constitute objective findings. *See* Ark. Code Ann. § 11-9-102(16)(A)(i) (Supp. 2007).

Here, the only evidence suggesting that appellant sustained a compensable closed-head injury was found in the results of the neuropsychological testing and appellant's own testimony regarding his symptoms. There was no other *objective* evidence establishing an organic brain injury.[1] The results of the neuropsychological testing standing alone is not enough to estab-

---

[1] While we recognize appellant's dilemma in attempting to prove objectively a condition for which no objective test is currently available, nevertheless Ark. Code Ann. § 11-9-102(4)(D) requires a compensable injury be established by medical evidence supported by objective findings. We see no way for this dilemma to be addressed other than by legislative action.

lish a compensable injury; therefore we affirm the Commission's finding that appellant failed to prove the elements necessary to establish that he had an organic brain injury.

For his second argument on appeal, appellant makes several constitutional arguments. He contends that the evidence submitted by him establishes that the Executive Branch of the State of Arkansas and private interests have exerted pressure on workers' compensation administrative law judges and Commissioners which has infringed upon their decision independence and resulted in actual bias and the appearance of bias in the decisions of the administrative law judges and Commissioners. He further contends that an administrative quasi-judicial procedure that does not provide safeguards to protect the decisional independence of hearing officers violates the separation-of-powers doctrine established by the Constitution of the State of Arkansas and that external pressure exerted by political and private interests upon the quasi-judicial administrative decision makers violates the due-process rights of the parties appearing before the agency and invalidates and renders void adjudicative procedure of the agency. However, this court previously rejected identical arguments in *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007) and in *Murphy v. Forsgren, Inc.*, 99 Ark. App. 223, 258 S.W.3d 794 (2007). As in *Long* and *Murphy*, we find no merit to appellant's constitutional arguments. Thus, we affirm the Commission's decision.

ROBBINS, J., concurs.

GLOVER, J., agrees.

JOHN B. ROBBINS, Judge, concurring. Our court sought to certify this appeal to the Supreme Court because of a perceived inconsistency in the decisions of the Court of Appeals and because of the constitutional issues raised by the claimant. Certification was attempted notwithstanding the appeal was from an order of the Workers' Compensation Commission and such appeals have historically been decided initially by the Court of Appeals. This was so even if the appeal was postured as a second or subsequent appeal of a case previously decided by the Supreme Court. *See Houston Contracting Co. v. Young*, 271 Ark. 455, 609 S.W.2d 895 (1980) (holding the second or subsequent appeal rule inapplicable to appeals from the Workers' Compensation Commission). However, this past year the

Supreme Court accepted two appeals directly from the Commission. *Nucor Corp. v. Rhine*, 366 Ark. 550, 237 S.W.3d 52 (2006); *Johnson v. Bonds Fertilizer, Inc.*, 365 Ark. 133, 226 S.W.3d 753 (2006). I thought that the adoption of a new judicial article in the Arkansas Constitution may have been viewed by the Supreme Court as altering the former practice of requiring Workers' Compensation Commission appeals to pass through the Court of Appeals before review by the Supreme Court. The Supreme Court denied certification. Consequently, our panel decided this appeal, and I agree with the rationale of the majority's decision affirming the Commission's conclusion that appellant failed to prove by objective evidence that he suffered an organic brain injury. While I cannot say there is no merit to appellant's constitutional arguments, I am constrained to concur and affirm inasmuch as other panels of our court previously rejected identical arguments.