Raymond R. Abramson," Judge, dissenting. On April 1, 2010, while working as a police officer for the City of Rockport (the City), Glenn Myers was seriously 112injured in a collision. In this workplace incident, a full-sized pickup truck struck Myers’s vehicle. The people in the truck were both killed upon impact. Myers’s police car spun eight times before striking a cinder-block retainer wall. Myers contends he sustained a closed-head injury and is permanently and totally disabled because of the accident. The Arkansas Workers’ Compensation Commission (Commission) found that Myers proved he had sustained wage-loss disability in the amount of thirty percent but that he failed to prove that he sustained a compensable' head injury. The majority opinion of this court agreed with the Commission, citing the highly deferential standard of review afforded the Commission’s decision. I respectfully dissent for the following reasons. ■ In the Commission’s 2-1 opinion reversing the administrative law judge’s decision that Myers had proved by a preponderance of the evidence that he sustained a compensable brain injury, was permanently and totally disabled, and was entitled to additional temporary-total disability from February 2012 to March. 11, 2013, the Commission found that .“there is no evidence of record shewing that” appellant injured his head in the accident. This, simply put, is clearly erroneous. This court has found that it is reversible error for the Commission to state that there is no evidence on an issue when such evidence in fact appears in the record. Vijil v. Schlumberger Tech. Corp., 2011 Ark. App. 87, 2011 WL 386996. Here, there is ample evidence that Myers’s head injury was compensable. Furthermore, there is no evidence that offers an alternate reason for his injury. Myers testified that he had vivid memories of his treatment after the accident. When he was ■removed from the vehicle, he could not walk: At the emergency 113room, he had complaints of pain in his shoulders, head, chest, and all over his body. The medical records show that the focus of his treatment in 2010 was his right-shoulder injury, and then in June 2011, the focus was on his left-shoulder injury. - The pain in his head, neck, and back was not addressed during those treatment periods. ■ ■ In December 2012, Myers was referred to Dr. Barry Baskin, a physical medicine and rehabilitation" specialist, for treatment of neck pain, headaches, and cognitive issues, which Dr. Baskin noted had never been addressed with medical treatment. His headache's and neck pain had been present since the accident; moreover, his headaches were severe and daily. He also had memory issues and difficulty concentrating. He was quick to anger and easy to tire. He had episodes of dizziness and being light-headed. He was forgetful with everyday tasks. Dr. Baskin arranged for a neuropsychological evaluation by Dr. Zolten, a neuropsychologist. Dr. Zolten ran several tests that showed deficits consistent with a coup/contracoup brain injury. The majority cites to Watson v. Tayco Inc., 79 Ark. App. 250, 86 S.W.3d 18 (2002), and its holding that neuropsycho-logical testing is not enough to establish a brain injury. If the evaluation had stopped after Dr, Zolten’s exam, the evidence of record in this case would have been insufficient to establish a compensa-ble brain injury. The law requires more than the neuropsychological testing to prove a brain injury. Dr. Baskin’s record of the visit with Myers after the neuropsy-chological testing notes the results being consistent with traumatic brain injury. Myers had an MRI in February 2013, which showed “a very small focus of high signal within the deep white matter at the right frontal | ulobe felt to represent a small focus of gliosis scarring.” In March 2013, Dr. Baskin saw Myers again and reviewed the MRI and Dr. Zolteris observation of language-based deficits, including poor verbal abstraction, weaker-than-expected auditory recall, and verbal fluency. Dr. Baskin also stated that he was confident. that the results- of Myers’s testing and evaluation showed that Myers’s head injury was a result of the high-impact collision, specifically deeming the testing and evaluation legitimate .and noting that it was not manipulated by Myers. Myers testified as to his significant limitations. His wife and his mother also testified. The testimony reflects the dramatic change in the claimant’s mental abilities, personality, and ability to function. He was no longer the person he was prior to the accident. Myers has medical evidence, supported by objective findings, of a traumatic brain injury. As the dissenting commissioner wrote in his opinion, “In layman’s terms, the claimant’s, brain was damaged when it bounced against the back of his skull (the coup) and rebounded forward against the front of his skull (the contracoup).” The Commission blatantly disregarded this evidence, and the City provided no counter evidence to explain the cause of the injury. The City’s argument that the evidence in the record falls short in establishing a compensable injury to the claimant’s brain and that there is no objective-finding of injury is flatly refuted by the MRI. That test is objective evidence of injury to Myers’s brain, and it was presented. The law requires that the medical evidence of the injury and impairment be supported by objective findings. Singleton v. City of Pine Bluff, 97 Ark. App. 59, 244 S.W.3d 709 (2006). The medical records, combined with the facts that Myers has had memory gaps of time beginning at the scene of the accident, that he has had headaches and cognitive difficulties since the accident, and that the neuropsychological testing showed deficits, demonstrates that he has proved a compensable brain injury as a result of his April 1, 2010 collision. No contrary evidence exists to explain the findings on the brain MRI or Dr. Zolten’s testimony. While the Commission is not required 'to accept even uncontroverted evidence, it may not arbitrarily disregard it either. Edens v. Superior Marble & Glass, 346 Ark. 487, 58 S.W.3d 369 (2001). Here, the Commission has arbitrarily disregarded the findings and opinions of Drs. Baskin and Zolten. The Commission’s conclusion is not supported by substantial evidence. Even viewing all the evidence in a light most favorable to the Commission’s opinion, still leads to the conclusion that Myers’s brain injury is compensable. In the instant case, the Commission raised the bar to make the standard of proof an absolute medical certainty rather than reasonable medical certainty; this standard effectively makes it impossible to prove a compensa-ble injury in a controverted case. By allowing this higher standard and thereby setting an impossible bar, I cannot say that reasonable minds could have reached the Commission’s conclusion based on the record presented. The majority’s holding would appear to sound the death knell for any future brain injury of a claimant that did not manifest immediately upon the occurrence and was not addressed by medical personnel even though other severe injuries took precedence for treatment. ■ The Commission was not required to believe the evidence | ^presented in this case, but it was required to consider it. I would therefore reverse and remand this case for further consistent proceedings. Accordingly, I dissent. Kinard, J., joins.