KAREN R. BAKER, Associate Justice
Appellants/cross-appellees Multi-Craft Contractors, Inc., and Gallagher Bassett Services (collectively "Multi-Craft") appeal the decision of the Arkansas Workers' Compensation Commission ("Commission") awarding benefits to employee appellee/cross-appellant, Rick Yousey. As pertinent to this appeal, the Commission found that Yousey was entitled to a permanent anatomical-impairment rating of 29 percent for his brain injury and 24 percent for his left-eye injury, both to the body as a whole. The Commission further found that Yousey was not entitled to benefits based on a permanent anatomical-impairment rating based on pain. These injuries arose out of and in the course and scope of Yousey's employment with Multi-Craft. On appeal, Multi-Craft argues that the Commission's findings of permanent impairment ratings for Yousey's brain and left-eye injuries are not supported by substantial evidence and are in error as a matter of law. On cross-appeal, Yousey argues that the Commission's decision denying 100 percent total loss of use of his left eye is not supported by substantial evidence, and the Commission's decision denying 24 percent whole-body impairment rating for cranial nerve V and trigeminal nerve damage is not supported by substantial evidence. We affirm in part and affirm as modified in part on direct appeal and affirm in part and affirm as modified in part on cross-appeal.
On February 24, 2012, Yousey was severely injured during the course and scope of his employment with Multi-Craft. At the time of his injury, Yousey held his commercial driving license and was a tractor-trailer driver for Multi-Craft. On the day of Yousey's accident, Yousey was working with division manager Kevin McDonald. While Yousey was unloading equipment for Multi-Craft, he was seriously injured. Yousey suffered "innumerable facial fractures bilaterally," including his cheekbones, the maxillary and frontal sinus bones, bilateral fractures of the orbital walls, bilateral medial and lateral pterygoid plates, the nasal bone, and the mandible. Yousey also suffered a broken foot, a broken hand, and a torn rotator cuff. Despite surgical repair, Yousey was left with a misalignment of his eyes due to his left-eye being sunken in and downwardly displaced. As a result of his left-eye injury, Yousey now suffers from double vision and is unable to pass the requisite physical, which prevents him from holding his commercial driving license. Yousey also takes daily prescription medication for his headaches. However, when Yousey's headaches become too painful, he gets injections in the back of his head. Yousey also has problems with his short-term memory, numbness in his left cheek, and a cold sensation that runs up his face when he consumes cold food or beverages. Further, Yousey has lost most of his sense of taste and smell and now speaks slower than he did before the accident. Finally, after the accident, Yousey "cried all the time afterwards" and now must take an antidepressant.
On April 20, 2015, a hearing was conducted before the administrative law judge ("ALJ"). On July 13, 2015, the ALJ issued *158 its opinion finding that Yousey was not entitled to a 29 percent impairment rating to the body as a whole for his brain injury ; Yousey was not entitled to an assessment of 100 percent impairment to his vision system; Yousey was awarded $3,500 for his facial disfigurement pursuant to Arkansas Code Annotated section 11-9-524 (Repl. 2012) and an additional 15 percent impairment rating for his facial disfigurement; and awarded a 20 percent impairment rating for uncontrolled facial neuralgia pain.
On August 12, 2015, Multi-Craft filed its notice of appeal. As grounds for its appeal, Multi-Craft argued that the ALJ's award of a 15 percent impairment rating for facial disfigurement and an award of a 20 percent impairment rating for uncontrolled facial neuralgia pain are contrary to the facts and law.
On August 13, 2015, Yousey filed his notice of cross-appeal. As grounds for his cross-appeal, Yousey argued that the ALJ erred as a matter of fact and law in concluding that he failed to prove that he was entitled to a 29 percent whole-body impairment rating resulting from his brain injury and a 100 percent rating for the loss of vision in his left eye. Further, Yousey argued that the ALJ erred as a matter of fact and law in concluding that he attempted to prove that he sustained 100 percent impairment to his visual system. To the contrary, Yousey asked for an impairment rating for only his left eye, not his entire visual system.
On March 21, 2016, the Commission issued its opinion, affirming in part and reversing in part the ALJ's decision. The Commission found that Yousey was entitled to a permanent anatomical-impairment rating of 29 percent for his brain injury and 24 percent for his left-eye injury, both to the body as a whole. The Commission further found that Yousey was entitled to benefits of $3,500 for facial disfigurement pursuant to Arkansas Code Annotated 11-9-524 but that Yousey was not entitled to benefits based on a permanent anatomical-impairment rating for facial disfigurement in excess of the cap imposed by the statute. The Commission also found that Yousey was not entitled to benefits based on a permanent anatomical-impairment rating based on pain.
On April 21, 2016, Multi-Craft filed its notice of appeal. As grounds for its appeal, Multi-Craft argued (1) that the Commission's determination that Yousey was entitled to a 29 percent permanent anatomical-impairment rating to the body as a whole for a brain injury is not supported by substantial evidence and is in error as a matter of law; and (2) that the Commission's determination that Yousey was entitled to a 24 percent permanent anatomical-impairment rating to the body as a whole for loss of vision of the left eye is not supported by substantial evidence and is in error as a matter of law.
On April 27, 2016, Yousey filed his notice of cross-appeal. As grounds for his cross-appeal, Yousey argued (1) that the Commission's determination that he was not entitled to a 24 percent permanent-anatomical impairment rating to the body as a whole for permanent damage to the cranial and trigeminal nerves that resulted in uncontrolled facial neuralgia pain is not supported by substantial evidence and is in error as a matter of law; and (2) that the Commission's determination that he was not entitled to a 15 percent permanent anatomical-impairment rating to the body as a whole for disorder of the structural integrity of the face is not supported by substantial evidence and is in error as a matter of law.
On March 8, 2017, in a decision that was initially unanimous, the court of appeals reversed in part and affirmed as modified in part the Commission's decision awarding *159 Yousey benefits for brain and left-eye impairments. Multi-Craft Contractors, Inc. v. Yousey , 2017 Ark. App. 143. The court of appeals also affirmed in part and affirmed as modified in part Yousey's cross-appeal from the Commission's findings regarding his left-eye and facial-nerve injuries.
On March 27, 2017, Yousey filed a petition for rehearing in the court of appeals and a petition for review with this court, arguing that the court of appeals decision conflicts with the precedent of that court. On May 24, 2017, the court of appeals issued a substituted opinion denying the petition for rehearing. On June 1, 2017, we dismissed Yousey's petition for review as moot. On June 15, 2017, Yousey filed a renewed petition for review from the May 24, 2017 substituted opinion. On August 3, 2017, we granted Yousey's renewed petition for review and recalled the mandate from the court of appeals case. Accordingly, we consider the case as though it had been originally filed in this court. Curtis v. Lemna , 2014 Ark. 377, 2014 WL 4656613 (citing Fowler v. State , 339 Ark. 207, 5 S.W.3d 10 (1999) ).
It is well settled that the ALJ's findings are irrelevant for purposes of appeal, as this court is required by precedent to review only the findings of the Commission and ignore those of the ALJ. Johnson v. Bonds Fertilizer, Inc. , 375 Ark. 224, 289 S.W.3d 431 (2008) (citing Freeman v. Con-Agra Frozen Foods , 344 Ark. 296, 40 S.W.3d 760 (2001) ). In reviewing workers'-compensation claims, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. Crudup v. Regal Ware, Inc. , 341 Ark. 804, 20 S.W.3d 900 (2000). "Substantial evidence exists if fair-minded persons could reach the same conclusion when considering the same facts." Id. at 809, 20 S.W.3d at 903. The issue is not whether the appellate court might have reached a different result from the Commission, but rather whether reasonable minds could reach the result found by the Commission. Wallace v. W. Fraser South, Inc. , 365 Ark. 68, 225 S.W.3d 361 (2006). If so, the appellate court must affirm the Commission's decision. Id. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Cedar Chem. Co. v. Knight , 372 Ark. 233, 273 S.W.3d 473 (2008) (citing Patterson v. Ark. Dep't of Health , 343 Ark. 255, 33 S.W.3d 151 (2000) ). Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. Id. (citing Arbaugh v. AG Processing, Inc. , 360 Ark. 491, 202 S.W.3d 519 (2005) ).
A compensable injury, found in Arkansas Code Annotated section 11-9-102(4)(A)(i), is defined as "[a]n accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]" Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. Ark. Code Ann. § 11-9-704(c)(1)(B). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16)(B). As the claimant, Yousey bears the burden of proving a compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i).
*160 Brain Injury
For its first point on appeal, Multi-Craft argues that the Commission erred in awarding benefits for Yousey's brain injury. Specifically, Multi-Craft argues that the Commission's decision finding that Yousey was entitled to a 29 percent impairment rating for his brain injury is not supported by substantial evidence. In response, Yousey argues that the Commission's decision regarding his brain injury is supported by substantial evidence and urges this court to affirm.
As stated above, the Commission found that Yousey met his burden of proving that he was entitled to a 29 percent permanent impairment rating to the body as a whole for his brain injury. The Commission found that the 29 percent rating was supported by objective evidence through the extreme force applied to Yousey's head and therefore his brain; the presence of pneumocephalus ; and the presence of the evidence of shearing on the MRI. The Commission also noted the subjective evidence found in Yousey's complaints, the neuropsychological testing, and the testimony and examinations of Dr. Back and Dr. Morse that establish symptoms consistent with a brain injury.
The medical evidence supporting the Commission's findings regarding Yousey's compensable brain injury is summarized as follows. Dr. Richard Back, a clinical psychologist who has examined and treated Yousey, testified that he performed neuropsychological testing on Yousey. Dr. Back testified that Yousey had significantly impaired, or markedly impaired, memory function, and that his left hand was notably slow in both terms of fine- and gross-motor tasks. Dr. Back gave Yousey a diagnosis of dementia. Dr. Back explained that dementia means "a brain dysfunction from whatever source ... the source is the head injury." Dr. Back evaluated Yousey two years after his injury to assess Yousey's permanent mental condition. Pursuant to Dr. Back's October 2, 2014 disability-rating evaluation, Dr. Back assessed Yousey's mental-status impairment at 14 percent and Yousey's emotional and behavioral impairments at 18 percent. After combining these two ratings, Dr. Back found that Yousey was entitled to a total 29 percent impairment rating for his brain injury.
Dr. Back testified that the MRI report states that there "is an old lacunar infarct versus shear injury in the left internal capsule, so ... that's really not normal." Dr. Back explained that "the reference of shear is more what relates to a[n] acceleration-deceleration injury which would ... describe the type of injury he experienced." As to a shear injury, Dr. Back testified that
[s]hearing is what happens when you get any rotation in your head. When you're hit from behind ... shearing is your head jerks and then the whole brain ... even if it's just a fourth of an inch, twists quickly and then stops quickly, and so it disrupts-you can get minute shearing and spine separation in the neurons, in the cells. Even if you don't get enough separation for it to show up, it disrupts the chemical and electrical circuits.
In Dr. Back's opinion, the shearing that showed up on the MRI is an objective finding beyond Mr. Yousey's control. As to the February 24, 2012 CT scan report, it showed innumerable bones fractured in Yousey's head and face. Dr. Back testified that these are objective findings beyond Yousey's control and opined that the shear and force that it takes to break all the bones that were broken in his face, nose, and eye areas is the type of force that could also cause a brain injury. Further, Dr. Back testified that this is consistent with the type of force that would cause a *161 brain injury. In Dr. Back's opinion, Yousey's brain injury resulted from the force of this accident. In response to questions regarding his impairment ratings and whether the ratings were supported by objective evidence, like the CT scan and the shearing found on the MRI, Dr. Back testified, "Well, it's a logical flow. You've got evidence, physical evidence for the force-force of the blow ... that's what is required or the basis of enough force to cause shearing spreading out through the whole brain ... the evidence from all the fractures shows the power of the force that struck him and that's the power that is consistent with the type of cognitive injuries he shows on the testing." Dr. Back testified that the assigned impairment ratings were based on the objective findings from the CT scan, the MRI, and his clinical examinations of Yousey. Finally, Dr. Back testified that Yousey mentioned he was having problems with his speech, his memory, and the headaches behind his left ear and left eye and that those complaints fit "with the x-rays and the MRI in terms of the injuries and the fractures and the force that it took to fracture those bones which sends force-it doesn't stop at the bone. It goes all the way through the brain into the back of the head. " (Emphasis added.)
Dr. Morse, a board-certified neurologist who has examined and treated Yousey, testified that, as result of the accident, Yousey lost his sense of smell and taste, had ringing in his ears, was emotionally labile, had uncontrollable crying spells, had mild cognitive issues, was forgetful, and had slower speech than normal. Dr. Morse testified that these symptoms are consistent with a frontal-lobe brain injury. As to inferior-frontal lobe injuries, Dr. Morse testified that "[t]he base of your skull, the bottom of your skull right above your eyes is real rough, so when you have a head injury, your brain swirls around and is rubbed up against those rough surfaces and you can have some bruising at the very bottom of your brain there, and the classic symptoms of that are loss of smell and taste because those fibers go through the cribriform plate, which is a very thin plate at the base of the skull that's often fractured in head injuries. You can get personality changes from that. [Yousey] had a period of amnesia which indicated that his head injury was significant. It wasn't just his face. His brain was injured. " (Emphasis added.) Dr. Morse testified that he ordered an MRI and that it was normal. Dr. Morse also testified that while the MRI showed no evidence of hemorrhage, there is a very sensitive test that can detect brain damage from bleeding, but this specific test was not performed. Yousey's left eye was pushed back into his face compared to his right eye. Further, Dr. Morse testified that "[Yousey] had something in his left internal capsule. The internal capsule is where all the motor fibers come to one side of your body, so the left internal capsule would control the right side of the body, and he had a spot there and I couldn't tell if it was a cyst that he was born with, a shear injury due to a head injury, shearing where the fibers are separated and leaves a space or whether it was an old small infarct." Dr. Morse testified that an infarct occurs when there is "not enough blood to the area, a stroke." Thus, as to the left internal-capsule finding, Dr. Morse testified that it could be one of three possibilities: a cyst, a shear injury, or an infarct. As to the CT scan, Dr. Morse testified that the radiology report also noted a lacunar infarct in the left internal capsule. The report also noted pneumocephalus in the anterior cranial fossa. Dr. Morse testified that due to the "skull fracture, air was able to go from outside to inside his skull surrounding the brain, so that goes along with a skull fracture *162 . That can happen. There's just about no other way that can happen, which is not unexpected in this case." With regard to air getting to the brain, Dr. Morse testified that this "means his skull fracture was pretty bad is all that means. Anytime you have a skull fracture and air getting in, bacteria could get in, dirt could get in, foreign bodies could get in. You could develop problems later on, seizures, meningitis, encephalitis, but I don't believe he had any of those." Finally, Dr. Morse testified that "[h]e just didn't hit his head. I mean, he had a severe skull fracture. This is the worst thing I've ever seen. I've never seen a fracture like this since 1981, when I started-well, really '77, when I started doing it. He's lucky to be alive. " (Emphasis added.)
Based on this evidence, Multi-Craft admits that Yousey's accident was very serious and that there is no dispute that the medical testimony of both Dr. Morse and Dr. Back was subjective evidence of a brain injury. However, Multi-Craft contends that the issue, as required by Arkansas Code Annotated section 11-9-704(c)(1)(B), is whether there were "objective findings" to support the brain injury. Multi-Craft contends that there were no such objective findings. We disagree.
We recognize that our court of appeals has held that neuropsychological testing, without more, is not adequate to establish an organic brain injury by "objective findings" within the meaning of Arkansas Code Annotated section 11-9-102. Parson v. Arkansas Methodist Hosp. , 103 Ark. App. 178, 182, 287 S.W.3d 645, 648 (2008) (citing Rippe v. Delbert Hooten Logging , 100 Ark. App. 227, 266 S.W.3d 217 (2007) ). See Watson v. Tayco, Inc. , 79 Ark. App. 250, 86 S.W.3d 18 (2002) (holding that the results of neuropsychological testing, standing alone, is not enough to establish a compensable injury). Here, however, Yousey's injuries and the extensive medical support for his injuries are distinguishable from these cases. The injuries suffered by the claimants in Parson and Rippe pale in comparison to the severe, life-altering brain damage that now affects every facet of Yousey's life. In Parson , while working as a nurse, Parson fell and hit her head on a desk. Parson's fall resulted in bruising and black eyes. On appeal, Parson argued that the Commission erred in finding that she failed to establish a compensable brain injury. Contrary to the Commission's findings, Parson argued that there were objective findings to support her claim: a soft-tissue injury to her head and knees, resulting in a hematoma to her left forehead and facial contusions and that she suffered a concussion. However, the court of appeals disagreed and held that Parson's injuries were undisputedly objective findings, but these findings supported the injury only to Parson's head and were not sufficient to support a compensable injury to her brain. Likewise, in Rippe , Rippe was injured when a tree fell from a logging truck and struck him, knocking him to the ground. As a result, Rippe suffered a scalp laceration and an elbow injury. Rippe also claimed that after his injury, he had trouble with his memory and his ability to communicate. Despite his neuropsychologist's diagnoses of a concussion and organic brain dysfunction, the Commission affirmed the ALJ's finding that Rippe failed to establish his alleged organic brain injury by medical evidence supported by objective findings. On appeal, Rippe argued that the Commission's finding that he failed to establish by a preponderance of the evidence the elements of a compensable organic brain injury was not supported by the evidence. Again, the court of appeals disagreed and held that Rippe relied solely on his own testimony and neuropsychological testing to support his alleged *163 brain injury, which were not sufficient to support a compensable injury to his brain.
We agree that neuropsychological testing, without more, is not adequate to establish an organic brain injury by "objective findings" within the meaning of Arkansas Code Annotated section 11-9-102. Here, however, Yousey has presented neurological testing and additional medical evidence of his brain injury. Contrary to Parson and Rippe , Yousey did not suffer a mere concussion or scalp laceration. Instead, Yousey's skull was so severely fractured that, according to Dr. Morse, his CT scan revealed pneumocephalus in the anterior cranial fossa. This means that Yousey's skull fractures were so severe that "air was able to go from outside to inside his skull surrounding the brain." Dr. Morse testified that "[Yousey's] brain was injured." Similarly, Dr. Back testified that Yousey's problems with his speech, memory, and headaches comport with "the x-rays and the MRIs in terms of the injuries and the fractures and the force that it took to fracture those bones which sends force-it doesn't stop at the bone. It goes all the way through the brain into the back of the head." Thus, this is clearly not a case in which the Commission relied solely on neuropsychological testing. The severity of Yousey's skull fractures and the presence of pneumocephalus on his CT scan, coupled with Dr. Back's and Dr. Morse's testimony that Yousey suffered a brain injury, clearly establish that Yousey did, in fact, suffer a compensable injury to his brain. Based on the record before us and the testimony detailed above, Yousey presented substantial evidence of his brain injury.
Accordingly, based on our standard of review, the Commission's decision that Yousey was entitled to a 29 percent permanent impairment rating to the body as a whole for his brain injury is supported by substantial evidence.[1]
Left-Eye Injury
For its second argument on appeal, Multi-Craft argues that the Commission's finding that Yousey was entitled to a 24 percent impairment rating for his left-eye injury is not supported by substantial evidence because Yousey's visual acuity and peripheral vision were not affected by his injury, and he can still see out of his left eye. On cross-appeal, Yousey argues that the Commission's award of 24 percent whole-body impairment was presumably based on Dr. Lawton's converting the 100 percent total loss of the left eye to a 25 percent loss of the "visual system," which Dr. Lawton further converted to a 24 percent whole-body impairment rating. Thus, Yousey argues that the Commission's decision is not supported by substantial evidence and must be reversed in favor of an award for 100 percent total loss of his left eye. The parties agree that this is a scheduled injury.
Dr. Andrew Lawton, an ophthalmologist with a subspecialty in neuroophthalmology, testified that while Yousey had reparative surgery, he continues to have movement problems of the left eye. Dr. Lawton testified that Yousey's eyes are misaligned because his left eye is sunken in and downwardly displaced. Further, while Yousey has 20/20 vision in both of his eyes, his eyes do not work together as a unit. Dr. Lawton prescribed Yousey a temporary prism in an attempt to get his eyes to *164 work together. The temporary prism would have been placed on a pair [of] eyeglasses, and it "bends light a little bit so that it tries to realign the images. That didn't work." Finally, Dr. Lawton suggested Yousey cover his left eye while driving his personal vehicle "so that he wouldn't have that confusion when driving and see two separate images and being in the risk of an accident." The American Medical Association's Guides to the Evaluation of Permanent Impairment interpret double vision as a loss of vision in that eye because a person would have to cover one eye in order to function. Thus, Dr. Lawton testified that pursuant to the AMA, Yousey was entitled to a rating for total loss of vision in his left eye, which is a 25 percent impairment to the entire visual system and translates to a 24 percent impairment to the body as a whole. The Commission adopted Dr. Lawton's recommendation.
We agree with the parties and hold that Yousey's left-eye injury is a scheduled injury. Our court of appeals has explained that the test of whether an injury falls within the scheduled-injury category is primarily a question of law. Fed. Compress & Warehouse Co. v. Risper , 55 Ark. App. 300, 935 S.W.2d 279 (1996). The court further explained that partial permanent impairments to the eyes come within the scheduled-injury category as set forth in Arkansas Code Annotated section 11-9-521 and that claimants are limited to the scheduled benefits. Id. A claimant who sustains a scheduled injury is limited to the applicable allowances set forth in section 11-9-521. Id.
The applicable statute, Arkansas Code Annotated section 11-9-521(a)(14), states that an enucleated eye, in which there was useful vision, is a scheduled injury for which an employee shall receive weekly benefits in the amount of the permanent partial-disability rate attributable to the injury for 105 weeks. Compensation for the permanent loss of 80 percent or more of the vision of an eye shall be the same as for the loss of an eye. Ark. Code Ann. § 11-9-521(c)(1). Based on Dr. Lawton's testimony, there is substantial evidence to support the Commission's finding that Yousey was entitled to a 100 percent loss of vision to his left eye. However, we hold that the Commission erred in converting Yousey's impairment to the body as a whole. As stated above, because Yousey's impairment to his left eye comes within the scheduled-injury category, he is limited to the scheduled benefits. We affirm the Commission's finding of 100 percent impairment to Yousey's left eye but modify the award to reflect that it is a scheduled injury.
Trigeminal Nerve Injury
On cross-appeal, Yousey argues that the Commission's decision to deny 24 percent whole-body impairment for cranial nerve V and trigeminal nerve damage was not supported by substantial evidence. We disagree. "When determining physical or anatomical impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain." Ark. Code Ann. § 11-9-102(16)(A)(ii)(a) . Accordingly, the Commission properly found that Yousey was not entitled to an impairment rating for his nerve injuries because the rating established by Dr. Morse was based solely on Yousey's level of pain. Thus, we affirm the Commission's denial of permanent impairment benefits for Yousey's nerve-injury claims.
Affirmed in part and affirmed as modified in part on direct appeal; affirmed in part and affirmed as modified in part on cross-appeal; court of appeals opinion vacated.
Goodson, Hart, and Wynne, JJ., concur in part and dissent in part.
Wood and Womack, JJ., dissent.
*165 I concur with the majority in many respects; however, I cannot join in its decision to reinstate the Arkansas Workers' Compensation Commission's (Commission's) award of benefits for appellee/cross-appellant Rick Yousey's brain injury. While there is no doubt that the accident and the resulting head injuries suffered by Yousey were horrific, I disagree that he presented objective findings to establish a brain injury.
The claimant has the burden of proving the compensability of his or her claim by a preponderance of the evidence. Pearson v. Worksource , 2012 Ark. 406, 424 S.W.3d 311 ; Ark. Code Ann. § 11-9-102(4)(E) (Repl. 2012). Pursuant to Arkansas Code Annotated section 11-9-704(c)(1)(B), any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. "Objective findings" are defined as those that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). In addition, any medical opinions addressing compensability or permanent impairment must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16)(B). There is no requirement that medical testimony be based solely or expressly on objective findings; medical evidence of the injury and the impairment must, however, be supported by objective findings. Wayne Smith Trucking, Inc. v. McWilliams , 2011 Ark. App. 414, 384 S.W.3d 561.
None of the evidence cited by the Commission in support of its decision to award benefits for Yousey's brain injury satisfies the statutory requirement of objective findings. First, the Commission cited to the severity of the damage to Yousey's head, indicating that this was objective evidence of the extreme force applied to his head and therefore to his brain. While there was certainly objective medical evidence to establish the numerous skull and facial fractures and other injuries suffered by Yousey, appellants paid for medical treatment for these injuries. It is Yousey's claim of a brain injury and any resulting impairment therefrom that is at issue, and even Yousey's neurologist, Dr. Michael Morse, testified that he could not point to objective evidence of a brain injury. While Dr. Morse and Dr. Richard Back, the psychologist who examined Yousey, both indicated that the severity of the injuries suffered by Yousey "could" cause a brain injury or could be consistent with such an injury, these are not objective and measurable findings as required under Arkansas Code Annotated section 11-9-704(c)(1)(B).
Second, the Commission pointed to the presence of pneumocephalus, or an air cavity in Yousey's skull. The Commission stated that this finding, which was revealed on Yousey's CT scan, was objective evidence of a skull fracture, and "a skull fracture must involve trauma to the brain." As appellants contend, this conclusion was based on conjecture by the Commission. Dr. Morse testified that the pneumocephalus was an indication of a "pretty bad" skull fracture, but he did not state that this was also objective evidence of an injury to Yousey's brain. To the contrary, as noted above, Dr. Morse expressly stated that there were no objective findings of an injury to Yousey's brain.
Finally, the Commission relied on evidence of a shear injury on Yousey's MRI. However, there was no testimony by Dr. Morse that the spot on Yousey's left internal capsule was in fact a shear injury. Dr. *166 Morse indicated that he could not determine whether the spot was a preexisting cyst, a shear injury due to the head trauma, or an old infarct (stroke ). The Commission noted that 100 percent certainty was not required for causation and found that "there is more than 50% likelihood that the CT and MRI showed evidence of a shear injury and not an old stroke." Again, this statement is based on conjecture and is not supported by the evidence in the record. In fact, Dr. Morse specifically testified that he could not say that it was more likely than not that the spot was a new injury caused by shearing. Further, the Commission's discussion ignores completely Dr. Morse's testimony that the spot may have been from a cyst that was present in Yousey's brain since birth.
In sum, none of the "objective findings" listed by the Commission to support its decision to award Yousey a 29 percent permanent-impairment rating for his brain injury meet the statutory requirement that the existence and extent of physical impairment be supported by objective and measurable physical or mental findings. Substantial evidence exists to support the Commission's findings only if reasonable minds could have reached the same conclusion without resorting to speculation or conjecture. Serrano v. Westrim, Inc. , 2011 Ark. App. 771, 387 S.W.3d 292. Conjecture and speculation, even if plausible, cannot take the place of proof. Id.
Furthermore, our court of appeals has held that neuropsychological testing, standing alone, is not objective medical evidence to establish a brain injury. See, e.g. , Parson v. Ark. Methodist Hosp. , 103 Ark. App. 178, 287 S.W.3d 645 (2008) ; Rippe v. Delbert Hooten Logging , 100 Ark. App. 227, 266 S.W.3d 217 (2007). In Parson , the court of appeals held that while the claimant's facial hematoma and contusions were objective evidence of a head injury, there was no objective medical evidence of a brain injury. Id. The court noted that the claimant's concussion diagnosis, which was itself based on subjective criteria, was not an objective finding supporting a compensable brain injury and that medical opinions stated within a reasonable degree of medical certainty do not constitute objective findings. Id. Also, in Rippe , the court of appeals held that the claimant failed to prove a compensable brain injury because the only evidence to support that injury was found in the results of the neuropsychological testing and the claimant's own testimony regarding his symptoms. Id.
Here, as in both Parson and Rippe , the only evidence presented to support the existence and extent of Yousey's brain injury and resulting impairment were his subjective complaints, the results of his neuropsychological testing, and the opinions of his treating physicians. While I recognize that Yousey's injuries were significant, I cannot ignore the statutory requirements set forth by our legislature. Because there were no objective findings of the brain injury, the Commission's award of a 29 percent permanent-impairment rating for this injury was not supported by substantial evidence. Accordingly, I must dissent from the majority's decision to reinstate this award.
Wynne, J ., joins.
I agree with the majority's disposition of the Commission's award for Mr. Yousey's brain injury and Mr. Yousey's cross-appeal with regard to the Commission's decision to deny him benefits for cranial and trigeminal nerve damage. However, I disagree with the majority's decision to modify the award for Mr. Yousey's eye injury. In my view, there is no substantial evidence to *167 support the majority's conclusion that it was a scheduled injury, and I believe the majority's analysis is incorrect as a matter of law. The Commission should be affirmed on all points.
Under Arkansas Code Annotated section 11-9-521, a claimant may receive scheduled-injury compensation for an eye injury only if it meets very definite criteria:
(a) An employee who sustains a permanent compensable injury scheduled in this section shall receive, in addition to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first, weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule:
....
(14) Eye enucleated, in which there was useful vision, one hundred five (105) weeks;
....
(c)(1) Compensation for the permanent loss of eighty percent (80%) or more of the vision of an eye shall be the same as for the loss of an eye.
....
(2) In all cases of permanent loss of vision, the use of corrective lenses may be taken into consideration in evaluating the extent of loss of vision.
In the case before us, Mr. Yousey's left eye was neither enucleated nor so degraded that he lost 80 percent of the vision in that eye. Accordingly, it cannot be a scheduled injury.
That is not to say that Mr. Yousey's injury to his vision should go uncompensated. In my view, the Commission made a very sound award that comports with the law and the facts in this case. I would therefore affirm the Commission's decision in its entirety.
I concur in part and dissent in part.
This case is before us because our court granted a "Renewed Petition for Review." As this renewed petition was untimely filed, and there were no grounds for us to recall the mandate, this case should be dismissed. Therefore, I must dissent.
The procedural history of this case matters. Yousey filed a simultaneous petition for review in this court and a petition for rehearing in the court of appeals on March 27, 2017. Once the court of appeals issued a substituted opinion denying the petition for rehearing, this court dismissed the petition for review as moot because the original opinion on which Yousey sought review no longer stood. After we dismissed the petition, the court of appeals issued the mandate. Yousey filed a motion to recall the mandate in the court of appeals and a renewed petition for review in this court on June 15, 2017. Multi-Craft argued in response to both that the renewed petition was untimely; therefore, the mandate should not be recalled and this court should not grant the petition. The court of appeals denied the motion to recall the mandate. This court granted the renewed petition for review and recalled the mandate. I believe this was done in error.
First, Multi-Craft was correct; the renewed petition for review was filed outside the time frame allowed for filing petitions for review under our rules. Arkansas Supreme Court Rule 2-4 (2017) states that a petition for review must be filed within 18 calendar days of the decision. The substituted opinion was issued on May 24, which required the petition to be filed by June 12, 2017. The renewed petition was not filed until June 15, 2017.
*168 Second, the court of appeals issued the mandate on June 1, 2017. The court of appeals was aware the renewed petition for review was pending and the arguments concerning its timeliness. It denied the motion. The motion to recall the mandate was not before our court. Our court recalled the mandate without a motion. Additionally, there were no grounds for us to recall the mandate. We have repeatedly said that this court will recall a mandate and reopen a case only in extraordinary circumstances. Wertz v. State , 2016 Ark. 249, 493 S.W.3d 772. "To establish the extraordinary circumstances that would warrant the recall of a mandate or the reopening of a case, we have enumerated certain factors to be considered, namely (1) the presence of a defect in the appellate process, (2) a dismissal of proceedings in federal court because of unexhausted state-court claims, and (3) the appeal is a death case that required heightened scrutiny." Ward v. State , 2015 Ark. 62, at 2, 455 S.W.3d 830, 832.
Here, the factors are not present, and Yousey did not allege any of these factors in his motion before the court of appeals. In his motion to recall the mandate, the single stated reason for his request is "so the Supreme Court can obtain jurisdiction to consider the renewed petition for review." This does not constitute an extraordinary circumstance.
As the renewed petition was untimely, there was no motion to recall the mandate before us, and there was no extraordinary reason to recall the mandate, it was an error to grant the petition for review and this matter should be dismissed.
Womack, J., joins.

Two of the dissenting justices take the position that this court erred in granting Yousey's renewed petition for review and would dismiss the appeal. Therefore, we reinstate the Commission's decision on this point. See Harley v. Dempster , 2018 Ark. 43, 2018 WL 1007849.