Cite as 2025 Ark. App. 339

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-24-636

| | |
|---|---|
| | Opinion Delivered May 28, 2025 |
| CITY OF CONWAY AND ARKANSAS MUNICIPAL LEAGUE WORKERS' COMPENSATION TRUST | |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. H107908] |
| V. | |
| JESSIE ELLIS | |
| APPELLEE | REVERSED |

**KENNETH S. HIXSON, Judge**

Appellants City of Conway and Arkansas Municipal League Workers' Compensation Trust (collectively, City of Conway) appeal from an order of the Arkansas Workers' Compensation Commission (Commission) that reversed the opinion of the administrative law judge (ALJ) and found that appellee Jessie Ellis established a compensable closed head injury and awarded associated benefits. City of Conway argues on appeal that the Commission's finding of compensability for a closed head injury was not supported by substantial evidence because such injury was not established by medical evidence supported by objective findings. We agree, and we reverse.

I. *Relevant Facts*

Ellis was employed as a police officer with the Conway Police Depaetment on June 17, 2020, when he was involved in a job-related accident. Ellis was engaged in a training

exercise that required him to pursue, on foot, another officer posing as a fleeing suspect. During the course of the chase, Ellis fell and hit his head on the curb of a sidewalk. Ellis testified that he did not believe he was rendered unconscious but that when he was able to open his eyes, "it seemed like stars or TV static." Ellis stated that it took him ten or fifteen seconds to stand up after he hit his head.

Another officer drove Ellis to the emergency room. The emergency-room report stated that as he was running, Ellis had fallen forward, striking his left hand, right leg, and left forehead on the ground. The report stated that Ellis denied loss of consciousness, neck pain, or any significant headache but that Ellis was nauseated and vomited during the visit, after which the nausea subsided. Ellis was diagnosed with abrasions to his left eyebrow, left hand, and right lower extremity as well as "mild closed head injury, initial encounter."[1]

The next day, Ellis resumed his regular duties as a police officer. However, according to Ellis, he felt lethargic, groggy, and confused, and he "knew something was off." As a result, Ellis returned to the emergency room on June 20, 2020, where he reported that a few hours after he left the initial emergency-room visit, he had developed a dull headache, and he was having difficulty concentrating during his work shifts. That same day, a CT scan of Ellis's head revealed "no acute intracranial findings."

---

[1]City of Conway admitted compensability for work-related abrasions above Ellis's left eye, to his knuckles, and to his knee. However, after Ellis had undergone numerous diagnostic tests, City of Conway subsequently controverted compensability for a brain injury based on its contention that there was no objective medical evidence of a brain injury.

On June 22, 2020, Ellis was examined by Dr. Gil Johnson. In a progress note, Dr. Johnson stated, "There's a small abrasion and soft tissue swelling just above the laptop [that] is quite tender to touch." Dr. Johnson gave the impression: "closed head trauma with contusion to frontal/parietal skull; posttraumatic headache; nausea and vomiting related to head trauma; [and] slightly altered mental status related to head trauma, currently stable." Dr. Johnson treated Ellis conservatively and returned him to work in a light-duty capacity.[2]

Dr. Johnson continued to provide follow-up treatment to Ellis, and on July 27, 2020, he noted that Ellis's headaches and memory issues had persisted, and he ordered an MRI. On July 30, 2020, an MRI of Ellis's brain was taken with the impression, "normal brain."

Ellis was referred to Dr. Barry Baskin, who became Ellis's primary treating physician. In Dr. Baskin's initial evaluation on September 3, 2020, he reported that Ellis had a left eyebrow laceration that did not require any staples or stitches and that he had been diagnosed with a questionable post concussive syndrome. On October 6, 2020, Dr. Baskin reported that Ellis had residual headaches, memory loss, and some blurring of his vision. Dr. Baskin recommended that Ellis see a neuropsychologist for neuropsychological testing.

Dr. Renee Magiera-Planey performed a neuropsychological evaluation of Ellis on November 13, 2020, and reported that Ellis displayed mild impairments in his progressive language skills and mild impairments in his comprehension. Dr. Magiera-Planey reported

---

[2]The Conway Police Department assigned Ellis to a light-duty job in the records department, and Ellis was released from the Department a little over a year later when it was determined that Ellis would be unable to resume his regular duties as a police officer. Ellis testified that he currently works for Shamrock Foods delivering boxes of food to businesses.

further that Ellis had described changes in his mood and level of patience after the accident and that Ellis was a candidate for a mood stabilizer to help with reported anxiety and mood swings.

Ellis continued to follow up with Dr. Baskin. On December 17, 2020, Dr. Baskin reported that "Ellis does not have any objective findings with regard to imaging studies or neurologic pathology."

Ellis also underwent an eye exam. On January 27, 2021, Dr. Jennifer Doyle of the Little Rock Eye Clinic reported that "his exam is completely normal today."

Ellis then underwent an EEG, which was performed on February 24, 2021. The EEG report stated that it was "a normal EEG."

A second neuropsychological evaluation of Ellis was performed by Dr. A.J. Zolten on April 2, 2021. Dr. Zolten reported that the test results were not entirely reliable due to Ellis's inconsistent effort and overreporting of psychological symptoms. Dr. Zolten stated, "In general, there are no overt deficits noted in [Ellis's] neurocognitive profile with the exception of poor visual construction skills and the related incidental visual memory after the visual construction task."

In May 2021, Ellis began treatment with Tobi Taylor, a licensed professional counselor. Ms. Taylor thought that Ellis may be suffering from an ongoing adjustment disorder with mixed anxiety and depressed mood. Ms. Taylor acknowledged in her deposition that her diagnosis was based entirely on Ellis's own reporting of symptoms, which she agreed could be manipulated. Ms. Taylor stated further that she is not qualified to test

4

for cognitive defects and is not qualified to provide an opinion on whether Ellis had suffered a traumatic brain injury.

In a September 14, 2022 report, Dr. Baskin stated that Ellis had memory loss, blurred vision, irritability, anger, fatigue, and generalized weakness. Dr. Baskin's overall impression was that "Ellis did in fact sustain a closed head injury and to some extent a traumatic brain injury without any significant bleeding or skull fracture or objective findings on his CT of the head or MRI of the head." Dr. Baskin assigned Ellis a 14 percent impairment rating "which is mild limitation of some but not all social interpersonal daily living functions."

On February 5, 2022, Dr. Baskin wrote a letter discussing his treatment and diagnosis of Ellis. Dr. Baskin stated, "He had a closed head injury without any significant hemorrhages, skull fracture, or significant objective findings on his imaging studies." In addressing what objective findings he had relied on in his diagnosis of a traumatic brain injury or closed head injury, Dr. Baskin wrote:

> Ellis had a definable work injury in which he hit his head. He was running and fell and hit his head on the concrete curb. He was dazed from that. He has continued to be somewhat dazed and mildly confused over the last year and a half, although he clearly has improved. . . . I believe based on my extensive amount of time with Ellis in the office face to face that this gentleman sustained a mild closed head injury with residual cognitive deficits and emotional and behavioral deficits.

Dr. Baskin gave a deposition on March 9, 2022. In his deposition, Dr. Baskin was asked about the differences among a traumatic brain injury, a closed head injury, and a concussion. Dr. Baskin explained that a traumatic brain injury is when there is trauma to the head, and there are findings of intracranial pathology on the imaging studies where you

5

might see a skull fracture or a subdural or epidural bleed inside the skull. He stated, "It's all kind of just terminology for the most part," but a closed head injury is typically not as bad as a traumatic brain injury as far as the findings. Dr. Baskin stated that a concussion is essentially when a person has suffered a blow to the head, and there may be some alteration of the person's level of consciousness or mental status.

Dr. Baskin testified, "I think [Ellis] fell, hit his head, and had a closed head injury without any positive findings on his imaging studies." Dr. Baskin stated that the symptoms commonly associated with a closed head injury are headaches, blurred vision, memory loss, loss of concentration and focus, and the inability to do things the patient could do before the injury.

In his deposition, Dr. Baskin agreed that a laceration above a person's eye is not objective evidence of an injury to the person's brain. When asked whether there was any objective evidence to establish the presence of a traumatic brain injury or a closed head injury, Dr. Baskin replied, "None – not any measurable objective findings." When asked if he viewed Dr. Zolten's assessment that Ellis had no neurocognitive deficits to be the final answer on that issue, Dr. Baskin stated, "Yeah."

Finally, Dr. Harpreet Kaur Sandhu performed a neurological examination of Ellis on May 31, 2023. In Dr. Sandhu's report, she stated:

> Patient has undergone extensive neurological workup including a Neuro-Ophthalmology evaluation which was reported to be within normal limits. Patient's neurological workup has been nondiagnostic and patient's chief complaint continues to be his behavioral and psychological issues.

At the hearing before the ALJ, both Ellis and his fiancée testified that Ellis continues to experience cognitive issues that were not present before the work-related accident. Ellis's issues include headaches, anxiety, depression, avoidance of social interaction, and a markedly decreased skill level at video games at which he had previously been proficient.

After the hearing, the ALJ issued an opinion finding that Ellis had failed to establish a compensable closed head injury with medical evidence supported by objective findings. However, the Commission reversed the ALJ and found that Ellis proved he sustained a compensable closed head injury. In its opinion, the Commission stated that Dr. Johnson's report noted a small abrasion and soft-tissue swelling on Ellis's forehead, and the Commission stated that swelling can be an objective finding establishing a compensable injury. The Commission found:

> [T]he claimant established a compensable injury by medical evidence supported by objective findings, namely doctor Johnson's report of "soft tissue swelling" in the claimant's forehead. We find that this objective finding was causally related to the compensable injury and was not the result of a prior injury or preexisting condition.

This appeal followed.

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might

7

have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock, supra*.

## III. *Discussion*

In this appeal, City of Conway argues that the Commission's finding of compensability for a closed head injury was not supported by substantial evidence because the injury was not established by medical evidence supported by objective findings. City of Conway asserts that the initial medical reports documenting an abrasion and soft-tissue swelling were indicative of only superficial external injuries and do not constitute objective evidence of a brain injury. It contends that the battery of objective tests that were performed that could have resulted in an objective finding, including a CT scan, an MRI, an EEG, and a comprehensive eye examination, all yielded normal results. City of Conway notes further

8

that Ellis's primary treating physician, Dr. Baskin, unequivocally stated that there were no objective findings to establish the presence of a traumatic brain injury or a closed head injury. We agree that there are no objective findings in the record to establish a compensable closed head injury, and we therefore hold that the Commission's finding of compensability is not supported by substantial evidence.

To prove the occurrence of a specific-incident compensable injury, the claimant must establish that (1) an injury occurred arising out of and in the scope of employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) *the injury is established by medical evidence supported by objective findings as defined in Arkansas Code Annotated section 11-9-102(16)*; and (4) the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4) (Supp. 2023). Section 11-9-102(16) defines objective findings as "those findings which cannot come under the voluntary control of the patient." The claimant has the burden of proving these elements by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E).

In reaching our decision in this case, we are guided by our reasoning in the analogous case of *Parson v. Arkansas Methodist Hospital*, 103 Ark. App. 178, 287 S.W.3d 645 (2008), in which we affirmed the denial of compensability for an alleged closed head injury. In that case, appellant Linda Parson sustained an admittedly compensable injury while working as a nurse when she fell and hit her head on a desk, resulting in bruising and black eyes. The appellee hospital provided the initial medical treatment for Parson's injuries but

9

subsequently controverted her claim that she suffered a brain injury.  Parson testified that she continued to suffer from headaches, memory loss, and attention-span problems as a result of the accident, and she could no longer perform her duties as a nurse.  Dr. Demetrius Spanos, a neurologist, reviewed two neuropsychological exams administered to Parson and assigned two 35 percent impairment ratings based on Parson's headaches and cognitive decline.  Dr. Spanos stated that these tests were conducted through a question-and-answer session, but he accepted the tests as objective because they were lengthy and convoluted and it would be difficult for the patient to fool the doctor who conducted them.  Although an MRI and an EEG showed no abnormalities or any objective sign of a traumatic injury, Dr. Spanos explained:

> Just because there was no abnormal result shown on the MRI does not mean there was no injury to the brain or nervous system.  Closed head injuries often show normal results. . . .  MRI's and EEG's can be normal and yet the patient has symptoms from the head injury.  There is some semblance of taking the patient at face value.

*Parson*, 103 Ark. App. at 181, 287 S.W.3d at 647.

In *Parson*, the Commission found that Parson had failed to prove compensability for a brain injury because there were no objective findings to support the injury as required by statute.  We affirmed the Commission's decision, holding that neuropsychological testing standing alone is not sufficient evidence of a brain injury; there must be some other objective evidence of such an injury.  We concluded in *Parson* that the two neuropsychological tests did not constitute objective findings and there were no other objective findings to support the existence of a brain injury.

10

Furthermore, in *Parson*, the appellant specifically argued that there were objective findings of a compensable brain injury because the initial medical reports documented a soft-tissue injury to the head resulting in a hematoma to the left forehead and facial contusions. These are objective findings because they cannot come under the voluntary control of the patient. Parson further relied on the medical diagnosis that she suffered a concussion as an objective finding to support an injury. However, we rejected her arguments, and we wrote:

> In the present case, the facial hematoma (swelling containing blood) and contusions (bruising) are undisputedly objective findings, but they only support the injury to appellant's head for which the appellees have already paid compensation. These findings are not sufficient to support a compensable injury to appellant's brain. Ms. Parson correctly asserts that she was also diagnosed with a concussion after the accident, but such a diagnosis without more does not constitute an objective finding. A concussion is "a jarring injury of the brain resulting in disturbance of cerebral function." *Webster's Ninth New Collegiate Dictionary* 273 (1991). There was nothing about Ms. Parson's diagnosis of a concussion to demonstrate that the diagnosis was based on anything other than subjective criteria. The evidence suggesting that Ms. Parson sustained a closed-head injury was found in the neuropsychological testing and appellant's own testimony regarding her symptoms, but because there was no other objective evidence establishing a brain injury, we hold that there was a substantial basis for the Commission's denial of compensability.

*Parson*, 103 Ark. App. at 182–83, 287 S.W.3d at 648. The opinion concluded:

> [W]e recognize appellant's dilemma in attempting to prove objectively a condition that is undetectable with objective tests. However, Ark. Code Ann. § 11-9-102(4)(D) requires that a compensable injury be established by medical evidence supported by objective findings, and we see no way for this dilemma to be addressed other than by legislative action.

*Id.* at 183–84, 287 S.W.3d at 649.[3]

---

[3]We observe that no such legislative action has since been taken. *See Johnson v. Land O'Frost*, 2025 Ark. App. 41, at 16, 704 S.W.3d 671, 680 (Virden, J., concurring) (stating that "the objective-findings requirement in this area of workers'-compensation law ignores reality,

11

In *Rippe v. Delbert Hooten Logging*, 100 Ark. App. 227, 266 S.W.3d 217 (2007), we reached the same result where an external head injury, although documented by objective findings, was nonetheless held to be insufficient to constitute objective findings of a brain injury. In *Rippe*, the appellant was working as a logger when a tree fell from a logging truck, striking his head and knocking him to the ground. Rippe sustained a scalp laceration and testified that his scalp was "split open and flipped over, like [he] had been scalped," and "felt like it was on fire." *Rippe*, 100 Ark. App. at 228, 266 S.W.3d at 219. Rippe further testified that that the injury resulted in serious memory problems and trouble with losing his balance. A CT scan of Rippe's head was normal but he was diagnosed with organic brain disfunction through neuropsychological testing. The Commission denied compensability because Rippe failed to establish a compensable brain injury with objective findings, and we affirmed. We held that neuropsychological testing was not objective evidence of a brain injury because it could come under the voluntary control of the patient, and we wrote:

> Here, the only evidence suggesting that appellant sustained a compensable closed-head injury was found in the results of the neuropsychological testing and appellant's own testimony regarding his symptoms. There was no other *objective* evidence establishing an organic brain injury. The results of the neuropsychological testing standing alone is not enough to establish a compensable injury; therefore we affirm the Commission's finding that appellant failed to prove the elements necessary to establish that he had an organic brain injury.

*Id.* at 233, 266 S.W.3d at 222 (emphasis in original).

---

medical technology, and common sense" and that, "quite simply, our legal system has not kept pace with the medical system.").

In the present case, as in both *Parson* and *Rippe*, there were objective findings of external injuries to Ellis's *head* in that he was initially reported to have a small abrasion and soft-tissue swelling on his forehead above his left eyebrow. However, these findings were not sufficient to support a compensable injury to Ellis's *brain*. All the diagnostic studies were normal, and Ellis's primary treating physician, Dr. Baskin, testified that there were no measurable objective findings to establish the presence of a traumatic brain injury or a closed head injury. And although Dr. Baskin thought Ellis had sustained a closed head injury from the fall at work, his opinion was based on a multitude of subjective factors, such as headaches, blurred vision, and memory loss, the reporting of which can come under the voluntary control of the patient. For these reasons, we conclude that contrary to the Commission's opinion, Ellis failed to establish a compensable closed head injury with medical evidence supported by objective findings.

Finally, we address Ellis's argument in his brief that this case is not analogous to *Parson* or *Rippe* but is instead more like *Multi-Craft Contractors, Inc. v. Yousey*, 2018 Ark. 107, 542 S.W.3d 155, a case in which the supreme court held that there were objective findings of a brain injury and affirmed the Commission's finding of compensability. For the following reasons, we disagree.

The appellee in *Yousey* was severely injured while unloading equipment for Multi-Craft. Yousey "suffered 'innumerable facial fractures bilaterally,' including his cheekbones, the maxillary and frontal sinus bones, bilateral fractures of the orbital walls, bilateral medial and lateral pterygoid plates, the nasal bone, and the mandible." *Yousey*, 2018 Ark. 107, at 2,

542 S.W.3d at 157.  Yousey also suffered a broken foot, a broken hand, and a torn rotator cuff.  Despite surgical repair, Yousey was left with a misalignment of his eyes due to his left eye being sunken in and downwardly displaced.  Dr. Back diagnosed Yousey with a brain injury and testified that shearing of the brain that showed up on an MRI was an objective finding beyond Yousey's control.  A CT scan showed innumerable bone fractures to Yousey's head and face, and it also detected pneumocephalus in the anterior cranial fossa, which Dr. Morse described as air going from the outside to the inside of the skull surrounding the brain that can accompany a skull fracture.  Dr. Back testified that Yousey mentioned he was having problems with his speech, his memory, and headaches behind his left ear and left eye and that those complaints fit "with the x-rays and the MRI in terms of the injuries and the fractures and the *force that it took to fracture those bones which sends force—it doesn't stop at the bone.  It goes all the way through the brain into the back of the head.*"  *Id.* at 10, 542 S.W.3d at 161 (emphasis in original).  Dr. Morse testified that "[h]e just didn't hit his head.  I mean, he had a severe skull fracture.  *This is the worst thing I've ever seen.*  I've never seen a fracture like this since 1981, when I started—well, really '77, when I started doing it.  *He's lucky to be alive.*"  *Id.* at 12, 542 S.W.3d at 162 (emphasis in original).

In reaching its decision in *Yousey*, the supreme court discussed our *Parson* and *Rippe* opinions and agreed with our assessment in those cases that neuropsychological testing, without more, is not adequate to establish an organic brain injury by "objective findings" within the meaning of the statute.  The supreme court stated, however, that Yousey's injuries and the extensive medical support for his injuries were distinguishable from *Parson* and *Rippe*

and that the injuries suffered by the claimants in those cases pale in comparison to the severe, life-altering brain damage that now affects every facet of Yousey's life. The supreme court wrote:

> Here, however, Yousey has presented neurological testing and additional medical evidence of his brain injury. Contrary to *Parson* and *Rippe*, Yousey did not suffer a mere concussion or scalp laceration. Instead, Yousey's skull was so severely fractured that, according to Dr. Morse, his CT scan revealed pneumocephalus in the anterior cranial fossa. This means that Yousey's skull fractures were so severe that "air was able to go from outside to inside his skull surrounding the brain." Dr. Morse testified that "[Yousey's] brain was injured." Similarly, Dr. Back testified that Yousey's problems with his speech, memory, and headaches comport with "the x-rays and the MRIs in terms of the injuries and the fractures and the force that it took to fracture those bones which sends force—it doesn't stop at the bone. It goes all the way through the brain into the back of the head." Thus, this is clearly not a case in which the Commission relied solely on neuropsychological testing. The severity of Yousey's skull fractures and the presence of pneumocephalus on his CT scan, coupled with Dr. Back's and Dr. Morse's testimony that Yousey suffered a brain injury, clearly establish that Yousey did, in fact, suffer a compensable injury to his brain. Based on the record before us and the testimony detailed above, Yousey presented substantial evidence of his brain injury.

*Id.* at 14, 542 S.W.3d at 163.

Contrary to Ellis's argument, *Yousey* is readily distinguishable from this case. The claimant in *Yousey* suffered severe skull fractures that were the worst his doctor had ever seen as opposed to a small abrasion and soft-tissue swelling on the forehead. And unlike the present case, in *Yousey* there was evidence of objective findings based on shearing shown on an MRI and pneumocephalus on a CT scan. In contrast, the MRI and CT scan performed on Ellis as well as other diagnostic tests yielded normal results with no objective findings of a brain injury. Because Ellis failed to establish a compensable closed head injury with medical evidence supported by objective findings, he failed to meet the statutory

requirements enacted by our legislature in this regard, and we are constrained to reverse the Commission's finding of compensability.

## IV. *Conclusion*

Having reviewed the record, we hold that the Commission's finding of compensability for a closed head injury was not supported by substantial evidence because such injury was not established by medical evidence supported by objective findings. Accordingly, the decision of the Commission is reversed.

Reversed.

ABRAMSON, J., agrees.

THYER, J., concurs.

**CINDY GRACE THYER, Judge, concurring**. I agree with the majority that, under the current state of workers' compensation law, we are left with no choice but to reverse the Commission's decision regarding the compensability of Ellis's brain-injury claim. However, for the reasons set forth in Judge Virden's concurring opinion in *Johnson v. Land O'Frost, Inc.*, 2025 Ark. App. 41, at 15, 704 S.W.3d 671, 680, I believe it is time for the legislature to revisit this issue.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellants.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellee.